UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERNEST J. GLYNN,<br>JEFFREY T. MACDONALD,<br>DOUGLAS K. JOHNSON and<br>JOSHUA T. RICHARDSON, individually and<br>on behalf of all others similarly situated,<br><br><br>           Plaintiffs,<br><br>   v.<br><br>MAINE OXY-ACETYLENE SUPPLY CO.<br>and DANIEL GUERIN,<br><br><br>         Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

_____

Plaintiffs Ernest J. Glynn, Jeffrey T. MacDonald, Douglas K. Johnson and Joshua T.

Richardson, on behalf of themselves and all others similarly situated, complain against

Defendants Maine Oxy-Acetylene Supply Co. ("Maine Oxy") and Daniel Guerin, as follows:

## INTRODUCTION

1.      This is a class action arising from Defendant Maine Oxy's establishment of an

Employee Stock Ownership Plan ("ESOP"), the subsequent acquisition of 49% of the

company by its employees and the Defendants' unlawful efforts to repurchase the shares for

a fraction of their value.  At a minimum, Defendants intentionally and/or negligently

misrepresented the value of the employees' 49% share of the company in order to facilitate

the repurchase of the employee stock at a steep discount, to the direct financial benefit of the

Defendants and to the wrongful detriment of the Plaintiffs and the Class.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff Ernest J. Glynn is an individual who currently resides in Hampton, New Hampshire.  At all relevant times, Mr. Glynn was an employee of Maine Oxy and a participant in Maine Oxy's ESOP.

3.      Plaintiff Jeffrey T. MacDonald is an individual who currently resides in Glenburn, Maine.  At all relevant times, Mr. MacDonald was an employee of Maine Oxy and a participant in Maine Oxy's ESOP.

4.      Plaintiff Douglas K. Johnson is an individual who currently resides in Addison, Maine.  Mr. Johnson was an employee of Maine Oxy until he left the company in July 2011 and a participant in Maine Oxy's ESOP until he was forced to sell his shares back to the company in November 2013.

5.      Plaintiff Joshua T. Richardson is an individual who currently resides in Alton, Maine.  At all relevant times, Mr. Richardson was an employee of Maine Oxy and a participant in Maine Oxy's ESOP.

6.      Defendant Maine Oxy is a Maine business corporation in good standing with a principal location in Auburn, Maine.

7.      Defendant Daniel Guerin is an individual who upon information and belief resides in Auburn, Maine.

8.      This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), as this claim arises from numerous violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et. seq.*

2

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), as the ESOP was administered in Maine, Maine Oxy's breach of the ESOP occurred in Maine, and Maine Oxy is a Maine corporation with a principal place of business in Maine.

## FACTS COMMON TO ALL COUNTS

10.     Maine Oxy is a supplier of welding equipment, industrial and specialty gases that was founded in 1929 and incorporated in the State of Maine in 1935.  The company has employees at retail sites throughout Maine, New Hampshire, Vermont, Massachusetts and Connecticut.  The company also has multiple locations in Canada.

11.     Until 2004 Maine Oxy was a closely held corporation owned by the Albiston family.

12.     In 2004 Bruce Albiston, the majority shareholder at that time, announced plans to establish an ESOP and sell a portion of his shares to Maine Oxy's employees through the ESOP.  The ESOP, which contained a profit sharing component, was intended as an additional employment incentive and retirement plan.

13.     Through the company, Mr. Albiston facilitated a loan that would allow the ESOP to purchase some of his stock.  The employees paid off the loan in due course.

14.     Mr. Albiston proceeded to implement the ESOP and sold 30% of the total company shares to the ESOP.

15.     In 2006 Mr. Albiston sold an additional 19% of the company to Maine Oxy's employees.  Upon completion of the sale, the ESOP held 49% of the company and Mr. Albiston held 51%.

16.     When the ESOP was implemented in 2004, Maine Oxy provided a "Summary Plan Description" ("SPD") of the ESOP to Maine Oxy's employees, describing the nature of the employees' investment and linking the value of the employee-owned stock to the value of the company.  Paragraph 2 of Maine Oxy's SPD states in relevant part as follows:

> Investment in Company Stock
>
> All amounts contributed to the Plan are invested in common stock of Maine Oxy-Acetylene Supply Company, except for amounts kept in cash to permit efficient administration of the Plan.  The value of your account will depend on the value of the stock of the Employer.  The stock value will be determined annually by an independent appraiser.

17.     Paragraph 11 of the SPD identifies Maine Oxy as the "Plan Administrator" and sets forth the responsibilities of the Plan Administrator, as follows:

> As Plan Administrator, the Employer is responsible for various determinations, such as whether an employee has satisfied the requirements for becoming a participant; performing administrative duties, such as ensuring that employees receive notice of their eligibility to become participants; and distributing information and filing reports with the government, such as distributing this SPD to employees and filing the Plan's annual report on Form 5500 with the U.S. Department of Labor.  Day-to-day administrative matters relating to the Plan, such as answering employee's questions and distributing and receiving employee election forms, are also the responsibility of the Plan Administrator.

18.     The following paragraph on page 10 of the SPD confirms that at all relevant times, Maine Oxy was aware of its fiduciary duties as the Plan Administrator under ERISA:

> **Prudent Actions by Plan Fiduciaries**
>
> In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan.  The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries.  No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA.

4

19.     In or around 2012 Mr. Albiston decided that it was time to step away from the company and divest his ownership position.  Confidential discussions and negotiations commenced between Mr. Albiston and Defendant Mr. Guerin, who was the president of the Maine Oxy at this time.

20.     Upon information and belief, at least one valuation company was engaged to assist the purchaser(s) in ascertaining a share value for acquiring the majority shares.  The 25,500 shares, comprising Mr. Albiston's 51% ownership of Maine Oxy, were valued at approximately $1,686 dollars per share, amounting to a value just shy of $43 million.

21.     According to Defendant Mr. Guerin, his purchase of Mr. Albiston's 51% share of the company was completed in October 2012.

22.     Mr. Guerin represented to Maine Oxy employees and the public that he was the purchaser of the majority interest in the company.  Upon information and belief, Brian Gentry, an individual residing in Pennsylvania and/or Florida, financed Mr. Guerin's purchase of the majority shares against the existing equity in the company.

23.     At all times since Mr. Guerin acquired Mr. Albiston's 51% share of the company, the Defendants have actively and deliberately concealed the sale price from the ESOP participants.  To this day, no ESOP participant has seen a purchase and sale agreement or any other documents confirming the sale price.

24.     When ESOP participants asked Defendant Mr. Guerin about the sale price, they were told that it was confidential and that they were not to ask again.

25.     Mr. Guerin, representing himself as the new owner, assured Maine Oxy's employees that "nothing would change" with the ESOP and profit-sharing plan.  Despite this assurance, he immediately set about making substantial changes to these programs.

26.     Following his purchase of the majority shares and his installation as the new owner of Maine Oxy, Mr. Guerin paid an unexpected visit to the company's ESOP Committee.

27.     Mr. Guerin informed the Committee that the company could not afford the ESOP, that the ESOP would have to be dissolved and its shares sold back to the company.

28.     Mr. Guerin made it clear to the Committee that a stock repurchase was the only way that the company could stay independent.  Mr. Guerin also informed the Committee that the value of the employee owned stock was "frozen" and that the employee-owners had no alternative but to sell the stock back to the company.

29.     In the Committee's final, brief meeting, Mr. Guerin depicted the imminent ESOP dissolution as a *fait accompli*, simply dependent upon reaching a majority number of participants availing themselves of the "opportunity" to sell their stock back to the company such that the ESOP could be discontinued.

30.     At Mr. Guerin's direction, the valuation firm, third-party administrator, and law firms associated with management, accounting, and oversight of the ESOP were relieved of their duties with Maine Oxy and replaced.

31.     Mr. Guerin also quietly disbanded the Employee ESOP Committee.

32.     Mr. Guerin announced to all employee owners an "offer" and "opportunity" to sell their stock back to the company.  The "opportunity" presented to employees came in the form of a "Special Diversification Eligibility Notice" dated August 9, 2013 (the "Notice").

33.     The Notice advised employees of the opportunity to "elect" to have their ESOP shares distributed to them so that they could "diversify" their investment into "alternatives other than investment in company stock for a portion of their ESOP balance." Per the express terms of the Notice, this was a "one-time" offer that expired "no later than 30 days after receipt."  The Notice also states that if the "Special Diversification Election Form" accompanying the Notice was not returned within 30 days, "you will be considered as having made an election NOT to diversify any portion of your ESOP balance."

34.     A Special Diversification Election Form was sent to each ESOP employee. These forms set forth the value of each employee's ESOP shares and required them to either "choose to make no diversification election" with the understanding that they "may or may not be given a similar opportunity in the future" or to "distribute my eligible balance according to my instructions below."

35.     If the employee chose to distribute their ESOP balance, they were given the following options: 1. to have some or all of cash value of their eligible shares distributed directly to the employee; 2. to roll some or all of the eligible shares into Maine Oxy's new 401k profit sharing plan; and/or 3. to roll some or all of the eligible shares into an eligible retirement account, such as an IRA.

36.     Mr. Guerin also announced that employees who did not redeem their shares would be ineligible for an employer match under the new 401k plan.

37.     At least one employee asked the company hired by Maine Oxy to set up the new 401k plan if any other options were available to him.

38.     The employee was informed that the only option was to sign over the stock to Maine Oxy and that the best thing thereafter would be to roll the proceeds from the company's purchase of his ESOP shares into the new 401(k) set up by the company.

39.     Defendant Mr. Guerin appointed himself as the sole point of contact for any questions with respect to the Notice and emphasized the thirty day time frame for this "opportunity."

40.     Employees were concerned that their ability to participate in the new 401(k) would be foreclosed or that they would be ineligible for an employer match if they did not exercise one of the options presented by the company within the thirty day deadline.

41.     All told, the employee-owners were collectively offered $134 dollars a share for the 24,500 minority interest shares comprising 49% of the total number of shares — approximately $3.3 million dollars in total.

42.     In the meantime, the terms of the ESOP were changed in order to eliminate the employees' right to receive common stock in the company upon dissolution of the plan.

43.     Neither the ESOP Committee nor the then serving Plan Trustee was informed of the change.  In fact, the Plan Trustee's signature was forged to the document implementing the change that divested employee-owners of their right to receive common shares upon dissolution of the ESOP.

44.     Several Maine Oxy employees initially refused to avail themselves of the opportunity to sell the stock back to the company and otherwise resisted the forced sale.

45.     Deliberately using false and misleading measures, Defendant Mr. Guerin played an active and effective role in forcing owner-employees to sell their shares back to the company.

46.     Defendant Mr. Guerin informed several owner-employees that the company could not afford the ESOP plan and remain an independent company.

47.     Defendant Mr. Guerin also let it be known that the value of the company was "frozen" and would "not go back up."

48.     Holdouts to the "opportunity" were subject to threats, intimidation, and harassment.  For example, one employee was subjected to phone calls at work and at home, as well as face-to-face meetings with Defendant Mr. Guerin.  During these confrontations, Mr. Guerin harassed and verbally harangued the employee to sell his stock back to the company post haste.

49.     The same employee was lobbied by other agents of the owner and bluntly informed that if he did not sign the stock over Mr. Guerin would find a reason - any reason - to fire him.

50.     One employee who initially refused to sell his stock back to the company was informed by Defendant Mr. Guerin that he would "ruin" the employee's life and that the company would "write him a check" and cash him out of the company.

51.     This fear was not unfounded, as the company's reputation of dumping workers for any reason and then fiercely contesting unemployment benefits was well known among its employees.

52.     The Defendants' threats, harassment, and intimidation took an emotional and physical toll on at least one employee subjected to the barrage.  The employee was subjected to several "screaming sessions" wherein Defendant Mr. Guerin aggressively berated the employee for failing to succumb and sign over his stock.

53.     Defendant Mr. Guerin specifically told the employee that he would get the employee's stock, "one way or another."  The employee became severely depressed.  He loved and enjoyed his job and now his workplace had become a hostile environment.

54.     In November 2013, this hold-out employee received a pointed notice of "opportunity" to receive a distribution of the retirement benefits directly from the company's CFO.

55.     Shortly thereafter Defendant Mr. Guerin called the employee at home during the evening and told him that "if he didn't sign his stock over the next morning it would be the last communication he would ever have with him," that he would "have his people cash him out in the morning" and "write him a check for which he would pay a 30% penalty for early withdrawal," and that "his lawyers would be in touch in the morning".

56.     The final threat obtained the desired results - the employee gave in and the next morning he signed and submitted the paperwork to sell his stock back to the company. Specifically, the employee opted to roll the assets over into an IRA outside the company.

57.     When the employee received his rollover check, he noticed that the value had increased significantly - $3,000 above what would have been paid had he availed himself of the "opportunity" to take the "special distribution" when it was offered in August 2013.

58.    Despite Defendant Mr. Guerin's prior representations, the value of the shares was most certainly not "frozen" and, as noted, continued to increase in value following the sale.  In fact, the value of the employee's shares had risen nearly a thousand dollars a month since the "opportunity" had first been forced upon him.

59.    On December 27, 2013 the Sun Journal newspaper reported that Defendant Mr. Guerin had assumed full ownership of Maine Oxy.

60.    Notably, the December 27, 2013 Sun Journal article also indicates that the "terms of the most recent sale were not disclosed" and that the "company's revenue [in 2013] was $38 million" dollars.

61.    Since Defendant Mr. Guerin's forced acquisition of the employees' stock, the value of the company has substantially increased.  Among other things, subsequent acquisitions of and affiliations with other major gas and air companies in the industry have added to Maine Oxy's value and increased its profits.

62.    In May or June of 2016, an ESOP participant met with Mr. Albiston.  During this meeting, Mr. Albiston revealed that had received 43 million dollars for his 51% share of the company.  This was the first time that any of the ESOP participants learned that they may have unwittingly sold their shares back to the company at a steep discount.

63.    During the summer of 2016, Brian Gentry's son Jason, who was working for Maine Oxy at the time, told one or more employees that his father had paid 43 million dollars for Mr. Albiston's 51% share.  Jason Gentry repeated this claim to two more Maine Oxy employees during the spring of 2018.

11

## CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

65.    The questions arising in this action are of an interest common or general to all members of the Class.

66.    The members of the Class are so numerous that joinder of all members is impracticable.  Specifically, Plaintiffs estimate that there are over 100 members of the Class.

67.    Plaintiffs therefore sue for the benefit of all Class members.

68.    The Class that Plaintiffs seek to represent is defined as follows:

> All Maine Oxy employees who participated in the company ESOP and who sold their shares back to Maine Oxy after Mr. Albiston sold his 51% interest in the company.

69.    The identities of all Class Members are known to Defendant Maine Oxy, and records should exist with respect to all aspects of the Class's claims.

70.    There are questions of law and fact common to the Class, including without limitation the following:

a.    Whether or not 51% of the company was sold in 2012-2013 for more than 3.4 million dollars, the value that was implicitly provided to Maine Oxy's employees in 2013 via the aggregate valuation of the 49% of employee-owned shares;

b.    Whether or not Defendants intentionally or negligently provided false and inaccurate valuations of its stock to ESOP participants at any time prior to coercing the employees to sell their shares back to the company;

c.    Whether or not Defendants deliberately and unlawfully misled, defrauded and/or otherwise coerced its ESOP participants into selling their shares back to the company at $134 dollars a share for the 24,500 minority interest shares—approximately 3.3 million dollars in total;

d.      Whether or not the ESOP participants are entitled to an additional distribution based on the true value of their shares, as determined by the price paid by Defendant Mr. Guerin for 51% of the company in 2012 or otherwise;

e.      Whether or not Defendants, by their actions set forth above or otherwise, violated the terms and provisions of the ERISA statute, as set forth in detail below;

f.      Whether or not Defendants' misconduct caused damages to Plaintiffs and the Class;

g.      Whether or not and to what extent the Defendants have profited from the ESOP assets since the repurchase of employee shares was completed; and

h.      Whether or not the ESOP participants are entitled to a share of Defendants' profits dating back to the time when the repurchase of employee shares was completed.

71.     Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of the Class Members and Plaintiffs will fairly and adequately protect the interests of the Class.  The interests of the Plaintiffs are identical to those of the other members of the Class.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Among other things, prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Among other things, prosecuting separate actions by or against individual Class members would create a risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of

the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Among other things, the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

75.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Among other things, prosecution of these claims as a class action will eliminate the possibility of repetitious litigation.

76.     To Plaintiffs' knowledge, there is no other pending litigation against the Class members or the Defendants arising from the allegations set forth in this complaint.

77.     Concentrating the litigation of the claims set forth in this complaint in this forum is desirable, as both Defendants and most of the Class members reside in Maine.

78.     Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
### Breach of Fiduciary Duty – 29 U.S.C. § 1104
### (Maine Oxy)

79.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

80.     The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1104.

81.     At all relevant times, Defendant Maine Oxy was a fiduciary for the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1104.

82.     By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1104(a)(1)(A)(i), which require Maine Oxy to discharge its fiduciary duties to the ESOP solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and their beneficiaries.

83.     By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1104(a)(1)(B), which require Maine Oxy to discharge its fiduciary duties to the ESOP with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

84.     By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1104(a)(1)(D), which require Maine Oxy to discharge its fiduciary duties to the ESOP in accordance with the documents and instruments governing the plan.

85.     As a result of Defendant Maine Oxy's breach of its fiduciary obligations to the Class, the members of the Class have suffered damages.

86.     As a result of the Defendant Maine Oxy's breach of its fiduciary obligations to the Class, it is liable to the members of the Class to: 1. compensate them for all losses resulting from the Defendants' breaches of their fiduciary duty; 2. restore any profits made by the Defendants through the use of ESOP assets; and 3. provide such other equitable or remedial relief as the court may deem appropriate.

**COUNT II**
**Breach of Fiduciary Duty – 29 U.S.C. § 1104**
**(Mr. Guerin)**

87.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

88.     The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1104.

89.     At all relevant times, Defendant Mr. Guerin was a fiduciary for the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1104.

90.     By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. §1104(a)(1)(A)(i), which require him to discharge his fiduciary duties to the ESOP solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and their beneficiaries.

91.     By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. §1104(a)(1)(B), which require him to discharge his fiduciary duties to the ESOP with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

92.     By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. §1104(a)(1)(D), which require him to discharge his fiduciary duties to the ESOP in accordance with the documents and instruments governing the plan.

93.     As a result of Defendant Mr. Guerin's breach of his fiduciary obligations to the Class, the members of the Class have suffered damages.

94.     As a result of the Defendant Mr. Guerin's breach of his fiduciary obligations to the Class, he is liable to the members of the Class to: 1. compensate them for all losses resulting from the Defendants' breaches of their fiduciary duty; 2. restore any profits made by the Defendants through the use of ESOP assets; and 3. provide such other equitable or remedial relief as the court may deem appropriate.

### COUNT III
### Breach of Fiduciary Duty – 29 U.S.C. § 1106
### (Maine Oxy)

95.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

96.     The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. § 1002 and 1106.

97.     At all relevant times, Defendant Maine Oxy was a fiduciary for the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1106.

98.     At all relevant times, Defendant Maine Oxy was a party in interest as contemplated by the provisions of by 29 U.S.C. § 1002 and 1106.

99.     At a minimum, Defendant Maine Oxy intentionally and/or negligently misrepresented the value of the employees' 49% share of the company in order to facilitate

the purchase of the employee stock at a steep discount, to the direct financial benefit of both Defendants and to the detriment of the ESOP participants.

100.    By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1106(a)(1)(A), which prohibit fiduciaries from engaging in any transaction if they knew or should have known that such transaction constitutes a direct or indirect sale or exchange of any property between the plan and a party in interest.

101.    By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1106(a)(1)(D), which prohibit fiduciaries from engaging in any transaction if they knew or should have known that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of a party in interest, of any assets of the ESOP.

102.    By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. §1106(b)(1), which prohibit fiduciaries from dealing with the assets of the ESOP for their own interests or for their own account.

103.    By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. § 1106(b)(2), which prohibit fiduciaries, in their individual capacity or in any other capacity, from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants.

104.    By its actions, Defendant Maine Oxy has violated the provisions of 29 U.S.C. § 1106(b)(3), which prohibit fiduciaries from receiving any consideration for their own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

105.     As a result of Defendant Maine Oxy's breach of its fiduciary obligations to the Class, the members of the Class have suffered damages.

106.     As a result of Defendant Maine Oxy's breach of its fiduciary obligations to the Class, it is liable to the members of the Class to: 1. compensate them for all losses resulting from the Defendants' breaches of their fiduciary duty; 2. restore any profits made by the Defendants through the use of ESOP assets; and 3. provide such other equitable or remedial relief as the court may deem appropriate.

### COUNT IV
### Breach of Fiduciary Duty – 29 U.S.C. § 1106
### (Daniel Guerin)

107.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

108.     The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1106.

109.     At all relevant times, Defendant Mr. Guerin was a fiduciary for the Maine Oxy ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1106.

110.     At all relevant times, Defendant Mr. Guerin was a party in interest as contemplated by the provisions of 29 U.S.C. § 1002 and 1106.

111.     At a minimum, Defendant Mr. Guerin intentionally and/or negligently misrepresented the value of the employees' 49% share of the company in order to facilitate the purchase of the employee stock at a steep discount, to the direct financial benefit of both Maine Oxy and Mr. Guerin personally and to the detriment of the ESOP participants.

112.    By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. § 1106(a)(1)(A), which prohibit fiduciaries from engaging in any transaction if they knew or should have known that such transaction constitutes a direct or indirect sale or exchange of any property between the plan and a party in interest.

113.    By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. § 1106(a)(1)(D), which prohibit fiduciaries from engaging in any transaction if they knew or should have known that such transaction constitutes a direct or indirect transfer to, or use by or for the benefit of a party in interest, of any assets of the ESOP.

114.    By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. § 1106(b)(1), which prohibit fiduciaries from dealing with the assets of the ESOP for their own interests or for their own account.

115.    By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. § 1106(b)(2), which prohibit fiduciaries, in their individual capacity or in any other capacity, from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants.

116.    By his actions, Defendant Mr. Guerin has violated the provisions of 29 U.S.C. § 1106(b)(3), which prohibit fiduciaries from receiving any consideration for their own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

117.    As a result of Defendant Mr. Guerin's breach of his fiduciary obligations to the Class, the members of the Class have suffered damages.

118.    As a result of Defendant Mr. Guerin's breach of his fiduciary obligations to the Class, he is personally liable to the members of the Class to: 1. compensate them for all losses resulting from the Defendants' breaches of their fiduciary duty; 2. restore any profits made by the Defendants through the use of ESOP assets; and 3. provide such other equitable or remedial relief as the court may deem appropriate.

### COUNT V
### Breach of Fiduciary Duty – 29 U.S.C. § 1132
### (Maine Oxy)

119.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

120.    The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1332(a).

121.    Based on the foregoing, the members of the Class are entitled to enforce their rights under the terms of the ESOP, and to seek additional benefits that are due to them under the terms of the ESOP.  At a minimum, the members of the Class are entitled to receive the difference between the amounts paid by Maine Oxy to buy back their shares and the true value of these shares, as established by the sale of the company or otherwise.

### COUNT VI
### Breach of Fiduciary Duty – 29 U.S.C. § 1132
### (Daniel Guerin)

122.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

123.    The members of the Class are participants and/or beneficiaries of the ESOP as contemplated by the provisions of 29 U.S.C. §§ 1002 and 1332(a).

124.    Based on the foregoing, the members of the Class are entitled to enforce their rights under the terms of the ESOP, and to seek additional benefits that are due to them under the terms of the ESOP.  At a minimum, the members of the Class are entitled to receive the difference between the amounts paid by Maine Oxy to buy back their shares and the true value of these shares, as established by the sale of the company or otherwise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for the following relief:

A.    That the Court certify the Class, appoint Plaintiffs as Class Representatives, and appoint undersigned counsel as Class Counsel;

B.    That the Court enter a judgment for damages, jointly and severally, against Defendants according to their liability for the respective counts of this complaint;

C.    That the Court enter a judgment for attorney fees, prejudgment interest and costs of suit, jointly and severally, against Defendants;

D.    That the Court enter a judgment for punitive damages against Defendants, jointly and severally, to make an example of them, in a sufficient amount to punish Defendants and to deter Defendants and others from such conduct in the future; and

E.    Such other and further relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38, Plaintiffs demand a trial by jury of all issues so triable in this action.

Dated:  April 25, 2019

Respectfully submitted,


/s/ Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS MCDANIEL
& CAMPO LLC, PA
90 Bridge Street, Suite 100
Westbrook, ME  04092
(207) 591-5747
*E-mail: tdouglas@douglasmcdaniel.com*


/s/ Jeffrey P. Russell, Esq.
Jeffrey P. Russell, Esq.
Bloomer Russell & Beaupain
175 Exchange St.
Bangor, ME 04401
(207) 942-7110
*E-mail: jeff@bloomerrussell.com*



/s/ Lauren Thomas
Lauren Thomas, Esq.
Law Office of Lauren Thomas, Esq.
18 Wild Rose Ave.
South Portland, ME 04106
(207) 619-4149
*E-mail: laurenthomaslaw@gmail.com*