UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ERNEST J. GLYNN, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 2:19-cv-00176-NT |
| | ) | |
| MAINE OXY-ACETYLENE SUPPLY CO., et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON DEFENDANTS' MOTION TO COMPEL
AND FOR SANCTIONS**

Defendants move to compel discovery from Plaintiff Walsh. (Motion, ECF No. 146.) Defendants contend Plaintiff has withheld responsive documents and refused to provide a witness pursuant to Federal Rule of Civil Procedure 30(b)(6) on several topics noticed by Defendants. Defendants also seek their attorney fees incurred in connection with the motion.

Following a review of the parties' submissions, and after consideration of the parties' arguments, I grant in part Defendants' motion and address other discovery issues in dispute.

**BACKGROUND**

In its February 25, 2022, Order following a telephonic conference with counsel to address several discovery issues, the Court concluded that "information regarding the loss determination in … voluntary compliance letter[s] [sent to Defendants by Plaintiff in 2019] is relevant and discoverable." (Order at 1, ECF No. 140.) The Court allowed Defendants

to explore the bases for Plaintiff's loss determination through the corporate deposition of the DOL, with narrowly focused topics and requests for documents. (*Id*. at 1-2.)

During the telephonic conference, the Court also considered the parties' dispute regarding the quality of the privilege log prepared by Plaintiff in response to Defendants' earlier request for documents. The Court ordered Plaintiff and Class Plaintiffs to respond to the stipulation proposed by Defendants regarding the scope of Plaintiff's claims and to inform Defendants whether they intend to present evidence regarding alleged retaliation by Defendants or to assert any other potential claims. (*Id*.) The Court authorized Defendants to file a motion to compel if Plaintiff or Class Plaintiffs intended to assert other claims and maintain any privilege as to Defendants' discovery requests.[1] (*Id*.)

## DISCUSSION

**A.      Voluntary Compliance Letters**

In response to Defendants' Rule 30(b)(6) deposition notice and document request, Plaintiff produced a spreadsheet detailing the loss determination referenced in the voluntary compliance letters (the letters), identified witnesses to testify on the calculation of the loss, and objected to some of the topics noticed by Defendants. Plaintiff objected to the following topics: Plaintiff's guidelines, procedures, and practices relating to the issuance of letters, Plaintiff's review of the letters sent to Defendants, and Plaintiff's approval of the letters sent to Defendants. (*See* Deposition Notice ¶¶ 5, 8-9, ECF No. 146-

---

[1] The Court also directed Plaintiff to notify Defendants if Plaintiff intended to assert a privilege as to any of the identified deposition topics or requests for documents. If the parties could not resolve any disagreement regarding an asserted privilege, the parties could request a conference with the Court or Defendants could file a motion to compel. (Order at 2.)

5.) Plaintiff argues the topics are not narrowly tailored as required by the Court's Order and would generate information that is not relevant to the claims and defenses in this matter. Plaintiff also asserts the information sought by Defendants is protected by the deliberative process privilege.

The deliberative process privilege "protects from disclosure documents [and information] generated during an agency's deliberations" about a policy or decision, "as opposed to documents that embody or explain" a policy or decision that the agency adopts." *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S.Ct. 777, 783 (2021). The privilege is designed to encourage "frank and open discussions of ideas" by protecting an agency's deliberative materials. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). Although the privilege often arises as an exemption claimed by government agencies to requests for information made pursuant to the Freedom of Information Act (FOIA), "the privilege may be applied in other circumstances as well…. Where the government asserts a privilege based upon the deliberative process, the same policies that underlie FOIA requests come into play." *Nulankeyutmonen Nkihtaqmikon v. Impson*, 251 F.R.D. 64, 66 n.1 (D. Me. 2008).

To qualify for the deliberative process privilege, a document "must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'" *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). A document is considered "predecisional" if the agency "(i) pinpoint[s] the specific agency decision to which the document correlates, (ii) establish[es] that its author prepared the document for

3

the purpose of assisting the agency official charged with making the agency decision, and (iii) verif[ies] that the document precedes, in temporal sequence, the decision to which it relates." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992) (citations and internal quotation marks omitted). A document is "deliberative" if it "(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Id*. at 559.[2]

An agency "may withhold non-exempt information only if it is so interspersed with exempt material that separation by the agency, and policing of this by the courts[,] would impose an inordinate burden." *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994) (internal quotation marks omitted).

"Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995). The privilege is qualified and not absolute, and a court "should consider, among other things, the interests of the litigants, society's interest

---

[2] Plaintiff's regulations describe the privilege as follows:

A claim of privilege may be asserted where the official has determined that: (1) The information was generated prior to and in contemplation of a decision by a part of the Department; (2) the information is not purely factual and does not concern recommendations that the Department expressly adopted or incorporated by reference in its ultimate decision; and (3) disclosure of the privileged matter would have an inhibiting effect on the agency's decision-making process.

Secretary's Order 16-2006, 71 C.F.R. 67023, ¶ 4(A)(2). It includes "predecisional intra-agency or inter-agency deliberations, including the analysis and evaluation of facts; written summaries of factual evidence that reflect a deliberative process; and recommendations, opinions, or advice on legal or policy matters in cases arising under statutory provisions or other authorities that are delegated or assigned to the agency." *Id*.

in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." *Id*. (internal citations omitted).

"In distinguishing between 'purely factual' and 'deliberative materials,'" many courts "have recognized that analysis and evaluation of facts are as much a part of the deliberative process as analysis and evaluation of the law." *Skelton v. U.S. Postal Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (collecting cases). Given that, to determine whether material is deliberative or predominately factual, a "careful case-by-case analysis of the material sought is thus necessary." *Wu v. Nat'l Endowment for Humanities*, 460 F.2d 1030, 1033 (5th Cir. 1972), *cert. denied*, 410 U.S. 926 (1973).

Here, Defendants ask the Court to order Plaintiff to produce a witness to testify as to the DOL's voluntary compliance letters, including the "DOL's guidelines, procedures, and practices relating to the issuance of compliance letters." After Defendants filed the motion to compel, Defendants conducted Plaintiff's Rule 30(b)(6) deposition. Plaintiff designated two individuals to testify on the topics identified in the notice of deposition. During the deposition, Plaintiff's counsel instructed the witnesses not to answer certain questions. Counsel's directive generates similar issues to the issues presented by the motion to compel. The Court, therefore, will address the motion and the issues generated by the depositions and discussed during a discovery conference on April 4, 2022.

Based on Plaintiff's arguments during the telephonic conference and in response to Defendants' motion, the Court understands Plaintiff to argue in part that the loss identified in the letters is not relevant because Defendants did not provide Plaintiff with all the pertinent information before Plaintiff calculated the loss and issued the letters. In the

5

Court's view, Plaintiff's argument demonstrates that the voluntary compliance letter process is relevant to the claims and defenses in this case. Presumably, Defendants will cite the loss identified in the letters to support their contention that the loss Plaintiff claims at trial is excessive. To argue that the information Defendants allegedly failed to provide resulted in an erroneous loss calculation, Plaintiff would necessarily have to explain the process by the Department of Labor calculates loss and prepares compliance letters. Plaintiff's argument might inform the weight to be afforded the prior loss calculation but does not govern the scope of discovery.

The loss included in the letters and the process by which the loss was calculated, therefore, are relevant to the claims and defenses in this action. Neither the deliberate process privilege nor the attorney-client privilege precludes the disclosure of information regarding the purpose of the voluntary compliance letters, the process by which the letters are developed, the individuals (by title) who are typically involved in the process, and whether the typical process was followed in this case. Accordingly, the Court will require Plaintiff to produce a witness or witnesses to testify to those topics. The witness or witnesses will not be required to testify as to the substantive internal communications involved in the calculation of the loss and preparation of the letters in this case.[3] The fact that the asserted privileges might apply to the internal discussions and decision-making,

---

[3] Defendants' argument that Plaintiff has waived the privilege by producing some information in response to other discovery requests is not persuasive.

however, does not mean Defendants cannot obtain through discovery certain information regarding the calculations in this case.

During the Rule 30(b)(6) depositions, Plaintiff's counsel instructed the witnesses not to answer certain questions Defendants posed regarding the calculations in the letters in this case. For instance, Defendants asked what IRC underpayment rates represent and why Plaintiff uses IRC underpayment rates to calculate lost opportunity costs. The Court considers the questions to be process-related and thus discoverable. Similarly, questions designed to determine whether at the time the letters were issued, Plaintiff believed the loss identified in the letters represented the entire loss attributable to Defendants' alleged unlawful conduct seek discoverable factual information.

Plaintiff's counsel also instructed the witness or witnesses not to respond to questions seeking the bases of some of Plaintiff's allegations in this case. The Court acknowledges the challenge in producing a witness or witnesses to testify as to the accuracy of some or all of the assertions made in this case (e.g., when did Plaintiff determine there is no indication of wrongful retaliation, when did Plaintiff conclude the loss identified in the voluntary compliance letters in 2019 was incorrect). The inquiries are not necessarily beyond the scope of permissible discovery but might practically be beyond the knowledge of a witness or multiple witnesses. Certain questions are more appropriately directed to Plaintiff by way of interrogatory questions or requests for admission. The Court will authorize additional discovery to permit Defendants to elicit the bases for some of Plaintiff's assertions.

## B. Privilege Log

In response to Defendants' requests for production of documents concerning allegations of retaliation or threats of retaliation by Defendants against putative members of the class, Plaintiff produced some documents with personally identifying information redacted. Plaintiff asserts the informant's privilege with respect to the information.

The informant's privilege protects "individuals who offer assistance to a government investigation" from "reprisal from those upset by the investigation." *Dole v. Local 1942, Int'l Bhd of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989). To assert the privilege, a government party "need not make a threshold showing that reprisal or retaliation is likely, because of the significant policy consideration behind the privilege, as well as the difficulty of such proof. Rather, the government is granted the privilege as of right." *Id*. at 372. The privilege is often invoked in criminal matters, but one court has noted that, in civil cases, "the privilege, which limits the right of disclosure usually called for by the Federal Rules of Civil Procedure, is arguably greater since not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants." *Id*.

The privilege is not absolute, however. It "yields when the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Id*.; *see also Roviaro v. U.S.*, 353 U.S. 53, 60-61 (1957) ("Where the disclosure of the informer's identity, or the contents of his communication is relevant and helpful to the defense of an accused, the privilege must give way."). Courts

must balance the defendant's need for the information to defend itself "with the important policy consideration underlying the privilege." *Dole*, 870 F.2d at 373.

> Plaintiff represents that he
>
> will produce a witness on "DOL's investigation of the alleged factual basis for the allegations in paragraph 27 of the complaint that 'Guerin engaged in an aggressive campaign to pressure individual ESOP participants to sell their shares' which included 'threats of possible adverse employment actions.' 30(b)(6) Notice, Topic 4.  While there is no ERISA § 510 retaliation count in the Secretary's Complaint, such evidence is relevant as to whether Guerin breached fiduciary duties, which is why the Secretary rejected Defendants' proposed stipulation.

(Opposition at 7 n.8, 2:20-cv-00326-NT, ECF No. 100.)  The personally identifying information about the individual(s) who made these allegations is thus relevant to Defendants' (particularly Defendant Guerin's) defense.  Plaintiff argues, however, that Defendants can conduct their own investigation regarding retaliation allegations, based upon the information that Plaintiff (and Class Plaintiffs) have produced, and that Defendants have all the facts concerning the allegations except the identifying information of the informants.

There is no bright-line rule for determining when the informant's privilege applies. *Roviaro*, 353 U.S. at 62.  Instead, courts balance "the public interest in protecting the flow of information against the individual's right to prepare his [case]," by considering "the particular circumstances of each case, taking into consideration … the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*.  The privilege, moreover, "protects those informants who have cooperated with government investigators by preserving their anonymity." *Dole*, 870 F.2d at 374; *see also Johnson v.*

9

*Dye*, No. 3:19-cv-00444-GCS, 2021 WL 4456552, at *4 (S.D. Ill. Sept. 29, 2021) (government "may assert this privilege in order to withhold the identification of persons who furnish information to law enforcement officers").

The Court cannot discern on the current record whether the individuals whose identifying information has been redacted in fact "cooperated" with or "furnished" information to Plaintiff's investigators. In addition, the Court cannot determine whether the investigators "promised confidentiality in order to encourage discussion with investigators." *Id*. at *5.

Even if the statements were made under conditions that would invoke the privilege, however, Plaintiff's anticipated use of the individuals' alleged statements would require disclosure of the identity of the individuals. Plaintiff evidently intends to present evidence at trial regarding threats or statements made by Defendant Guerin to the individuals to support Plaintiff's claim that Defendant Guerin breached his fiduciary duties. If Plaintiff were permitted to use the statements from anonymous sources as evidence, Defendant Guerin's ability to defend against Plaintiff's allegations would be significantly compromised. In other words, Defendant Guerin would be prejudiced.

The Court does not have to determine at this stage whether the statements would ultimately be admissible at trial or appropriate for inclusion in a dispositive motion record. The issue at this stage is whether Plaintiff intends to use the statements as evidence. Plaintiff must disclose the individuals' identities if Plaintiff intends to attempt to use the statements substantively in this case. The Court will establish a deadline by which Plaintiff must inform Defendants whether Plaintiff intends to use the statements as evidence.

## C.     Request for Attorney Fees

Defendants seek their attorney fees incurred in the preparation of the present motion. While Federal Rule of Civil Procedure 37(a)(5)(A) authorizes the Court to require a party to pay fees if the Court grants a motion to compel, fees should not be awarded if the nondisclosure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii) & (iii).  A position is substantially justified when "the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome."  *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 609 (D. Nev. 2016) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Courts have "great latitude" in awarding such expenses.  *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

In this case, the privilege issues are challenging, Plaintiff reasonably asserted the privileges as to some of the requested information, and the deliberate process privilege would apply to an inquiry regarding the internal communications related to the assessment of the loss identified in the letters.  The Court, therefore, will deny Defendants' request for attorney fees.  *See, e.g., Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (where city raised "serious and supportable" objections, sanctions not warranted).

## Conclusion

Based on the foregoing analysis, the Court grants in part Defendants' motion to compel and otherwise addresses the disputed discovery issues as follows:

1. Defendants may reconvene Plaintiff's Rule 30(b)(6) deposition.  Plaintiff shall produce a witness or witnesses to testify as to the purpose of the voluntary

11

compliance letters, the process by which the letters are developed, the individuals (by title) who are typically involved in the process, and whether the ordinary process was followed in this case. The witness or witnesses are not required to testify as to the substantive internal communications involved in the calculation of the loss identified in the letters and the preparation of the letters in this case.

2. Plaintiff shall respond to basic factual inquiries such as whether, at the time the voluntary compliance letters were issued, Plaintiff believed the loss identified in the letters represented the entire loss attributable to Defendants' alleged unlawful conduct and when Plaintiff determined that the loss was greater than the loss asserted in the letters.  Regardless of the number of interrogatory questions and requests for admission Defendants have posed, within fourteen days of the date of this Order, Defendants may serve upon Plaintiff additional interrogatory questions, request for admissions, or narrow deposition topics designed to elicit discoverable factual information regarding the loss asserted in the letters (e.g., whether, at the time the voluntary compliance letters were issued, Plaintiff believed the loss identified in the letters represented the entire loss attributable to Defendants' alleged unlawful conduct).  The Court expects Defendants will assess the type of information that reasonably and realistically can be obtained through a Rule 30(b)(6) deposition and the information that is more practically obtained through the other discovery initiatives.

3. Within fourteen days of the date of this Order, Plaintiff shall notify Defendants in writing whether it intends to use as evidence in this case the statements (i.e. threats of adverse employment action) allegedly made by Defendant Guerin. If Plaintiff intends to use the statements, with the notice, Plaintiff shall provide the names and, if known, the contact information of the individuals who made the statements. If Plaintiff informs Defendants that it does not intend to use the statements, Plaintiff is not required to provide identities and contact information, and Plaintiff will be foreclosed from using the statements as evidence in this case.

4. Plaintiff's request for attorney fees is denied.

## NOTICE

Any objections to the Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of April, 2022.