UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERNEST J. GLYNN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:19-cv-00176-NT |
| | ) |
| MAINE OXY-ACETYLENE SUPPLY CO., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**CLASS PLAINTIFFS' OBJECTION TO
DEFENDANTS' MOTION TO IMPOSE SANCTIONS**

Pursuant to Local Rule 7(b), Plaintiffs Ernest J. Glynn, Jeffrey T. MacDonald, Doug Johnson and Joshua Richardson, on behalf of themselves and all others similarly situated, respectfully submit their Objection to the Defendants' *Motion to Impose Sanctions* (ECF No. 185) and state as follows.

## **INTRODUCTION**

As the attached record conclusively demonstrates, Mr. MacDonald has not engaged in any behavior remotely resembling "spoilation." On the contrary, the correspondence in this case and the content of Defendants' submission confirm that this motion was filed at least in part in retaliation for Mr. MacDonald's allegations that the Maine Oxy Defendants have inappropriately shredded documents relevant to the case, that they harassed some members of the class into selling their stock shares back to the company at an enormous discount, etc. In terms of the supposed discovery 'dispute' underlying this motion, the factual record confirms that the Mr. MacDonald has made every effort to accommodate the Defendants' ever evolving requests for production, but no effort on Mr. MacDonald's part would have ultimately diverted the Defendants from filing this motion. Indeed, the Defendants stopped communicating with Mr.

MacDonald regarding this discovery 'dispute' when it became clear that to the extent that the Class Plaintiffs could actually determine what the Defendants were still looking for, there would be a good faith attempt to respond and they would ultimately have no basis for the instant 'spoliation' motion.

## STATEMENT OF FACTS

On February 15, 2021, the defendants filed a motion to consolidate the *Glynn* class action with the parallel lawsuit filed by the United States Department of Labor ("DOL") (ECF No. 85). In their motion to consolidate, the defendants argued, among other things, that "all parties will benefit from the efficiencies involved in conducting discovery in a consolidated case." By order of this Court dated May 27, 2021 (ECF No. 95), these two lawsuits were consolidated for purposes of discovery.

On or around August 21, 2021, Attorney Stacy Stitham of Brann and Isaacson sent an email raising purported discovery concerns with both the Class and the DOL. *Declaration of Thomas L. Douglas* ("Douglas Dec.") at ¶ 2. In the ensuing exchange of emails that followed, defense counsel specifically referenced the defendants' request for production of all documents provided to the DOL by the Class Plaintiffs. *Id*. In the meantime, class counsel became aware that the DOL was preparing to produce substantially all of the communications between the Class Plaintiffs and the DOL to the defendants. This was conveyed to Attorney Stitham in a telephone conversation on October 8, 2021. Given that these actions had been consolidated for purposes of discovery five months prior, and given that the DOL was likely to produce a complete set of these documents, in the Class Plaintiffs' view the DOL's production would resolve this discrete issue to the satisfaction of all parties. *Id.* ¶ 4.

The DOL did in fact produce these documents to the Defendants. *Douglas Dec.* ¶ 5. Following this production, on February 15, 2022 Attorney Brann sent the Class Plaintiffs an email accusing them of "spoliation" based on the fact that the DOL had produced a number of communications between the Class Plaintiffs and the DOL that the Class Plaintiffs themselves did not produce. *Id*. In his February 15, 2022 email, Attorney Brann assumes that Mr. MacDonald has failed to preserve these documents, an assumption later demonstrated to be substantially false. *Id*. ¶ 6

On February 18, 2022, the Class Plaintiffs responded to Attorney Brann's email. *Douglas Dec*. ¶ 7, Ex. A. Attorney Brann and undersigned counsel spoke by telephone on February 18, 2022. During this call, Attorney Brann indicated that the DOL had redacted certain categories of information from some of Mr. MacDonald's correspondence with the DOL and that he felt he was entitled to unredacted copies. *Douglas Dec*. ¶ 8. In an effort to resolve this issue, undersigned counsel discussed this issue with Mr. MacDonald. *Id*. On March 4, 2022, Mr. MacDonald produced substantially all of the previously redacted emails in unredacted form. *Id*.

The correspondence produced by Mr. Macdonald on March 4, 2022 was sent to defense counsel exactly as class counsel received it, which is to say that some of the emails lacked recipient information. *Douglas Dec*. ¶ 9. Defense counsel raised this issue on March 7, 2022. *Id.* Although it was abundantly clear from the text of these communications whom they were intended for, in an effort to resolve this dispute the Class Plaintiffs reproduced these emails with the recipient information included on March 24, 2022. *Id*. This process took some time, as it was necessary to have Mr. MacDonald appear at Attorney Russell's office in order to produce these communications in the format desired by the Defendants. *Id*. ¶ 10; *Deposition of Jeffrey MacDonald* ("MacDonald Dep") (ECF No. 185.9) at 196:1 – 196:24. Prior to producing these

3

emails to the Defendants for the *third* time (including the initial DOL production), the Class Plaintiffs confirmed with defense counsel *via* an email dated March 17, 2022 that this was the *only* issue to be remedied with respect to Mr. MacDonald's production. *Id.* ¶ 10, Ex. B.

The Class Plaintiffs' March 24, 2022 production resolved all of the issues that the Defendants had raised to date. *Douglas Dec*. ¶ 11. On March 26, 2022, Attorney Brann sent an email raising an entirely new set of issues with respect to Mr. MacDonald's production. *Id.*, Ex. C. Undersigned counsel responded to Mr. Brann's email on March 28, 2022:

> Peter:
>
> We produced over 400 pages of emails/attachments on March 4. Your office reviewed them at that time and on March 7, Ms. Stitham requested that we reproduce certain emails that did not include recipient information. Although the vast majority of these emails have little to do with any claim or defense in this case, we honored your request and reproduced these emails after confirming with your office in writing that this was all you folks were seeking. Now, at the 11th hour, after having the initial production for close to a month, you've apparently 'discovered' a whole new batch of deficiencies. Not to mention that your email below speculates about the existence of additional documents responsive to your requests, takes issue with documents that have already been produced, etc.
>
> If there are specific documents you think are missing and that are discoverable pursuant to Fed.R.Civ.P. 26, please bring those to my attention at your earliest convenience.

*Douglas Dec.* ¶ 12, Ex. D. Defense counsel declined to respond to this email before taking Mr. MacDonald's deposition on March 30, during which the defense had ample opportunity to explore these topics with Mr. MacDonald. *Id*. ¶ 13. On March 31, 2022, Attorney Brann sent an email raising yet another set of issues with the MacDonald production. *Douglas Dec*. ¶ 14, Ex. E. This email was sent at 9:46 a.m. on March 31, less than 15 minutes before the start of defense valuation expert Brian Bornino's deposition. At approximately 2:04 p.m. that afternoon, Attorney Brann filed a Request for Hearing Regarding a Discovery Dispute (ECF No. 157) regarding the alleged "spoliation" issue, while the Class Plaintiffs were still attending the

4

Bornino deposition, *ergo* before the Class Plaintiffs had a meaningful opportunity to respond to the defendants' new set of demands issued that morning. *Id.* ¶ 15.

The parties attended a discovery hearing with Judge Nivison on April 4, 2022. This conference was dominated by discussion of discovery issues between the DOL and the defendants, such that the "spoliation" issue was essentially not reached until the very end of the hearing. *Douglas Dec.* ¶ 16. No decisions were made regarding this issue at the April 4, hearing. Notably, Judge Nivison reminded the defendants that if the "spoliation" issue were not resolved, he expected them to follow the usual course of dealing with discovery disputes, *i.e.* to file another Request for Hearing pursuant to Local Rule 26(b). *Id.* ¶ 17.

On April 5, 2022, the Class Plaintiffs sent Attorney Brann an email indicating that they were once again looking into the discovery issues that the defendants had recently raised. *Douglas Dec.* ¶ 18. With respect to Mr. MacDonald's production of emails, this email noted that the defendants had "sent a number of conflicting emails over the last few weeks, not sure what you claim is missing at this point. Please confirm what you are actually looking for and I will respond accordingly. *Id.* In an email response the same day, defense counsel declined to provide any clarification whatsoever. *Id.* ¶ 19.

On April 8, 2022, Attorney Brann informed the Class Plaintiffs that despite their ongoing efforts to satisfy the defendants' ever-evolving demands with respect to Mr. MacDonald, they were "currently working a spoliation motion" applicable to his production, the clear inference being that as expected, the defendants planned to file a spoliation motion against Mr. MacDonald regardless of any additional documents that might be produced. *Douglas Dec.* ¶ 20. In the Class Plaintiffs' response later that day, Attorney Brann was reminded of Judge Nivison's directive to

file a Request for Hearing prior to filing any spoliation motion if the parties' efforts to resolve the matter proved unsuccessful. *Id.* ¶ 21, Ex. F.

On April 13, 2022 the Class Plaintiffs tendered their substantive responses to the defendants' March 31, 2022 list of demands, essentially producing all of the documents requested by Defendants, to the extent that these documents exist and could be identified from the Defendants' rather vague requests. *Douglas Dec*. ¶ 22, Ex. G. *Id*. The defendants declined to respond or to request a discovery hearing, opting instead to file the instant motion in direct violation of Local Rule 26(b).

### I. THERE IS NO EVIDENCE THAT MR. MACDONALD ENGAGED IN "SPOILATION"

What is markedly absent from the recitation of facts above is any evidence that Mr. MacDonald engaged in "spoliation." "An inference of spoliation depends on underlying facts that would permit a fact finder to conclude that those who destroyed the materials did so "in bad faith or . . . consciousness of a weak case." *Joler v. Scott Paper Co*., 65 F.3d 160, 1995 WL 520723, *3 (1st Cir. 1995) (declining to impose sanctions for spoliation, as "there is no indication that anything was destroyed in order to prevent its use in litigation or that anything lost contained information helpful to [the Plaintiff]"); *citing Allen Pen Co. v. Springfield Photo Mount Co*., 653 F.2d 17, 23 (1st Cir. 1981) (request for spoliation sanctions denied, as there was "no evidence that the document destruction was in bad faith or flowed from the consciousness of a weak case," nor was there evidence that the defendant "believed that the [missing evidence] would have damaged it in a lawsuit."

In the first place, the Defendants have failed to establish that any documents were actually destroyed in this case. On the contrary, Mr. MacDonald has produced over 500 pages of documents, including virtually all of the documents Defendants have requested during this

6

discovery dispute.  The Defendants' speculation regarding the existence of additional documents is light years away from the showing necessary to impose spoilation sanctions.  Notably, at his deposition, Mr. MacDonald testified unequivocally that he did not delete any emails or text messages that are relevant to this case.  *MacDonald Dep*. at 234:25 – 235:7.  Nor have the Defendants identified any documents that are actually "missing."  Their motion merely speculates about the possible existence of certain documents, despite Mr. MacDonald's unequivocal deposition testimony confirming that he has not destroyed any potentially relevant documents in this case.  Specifically, the Defendants' Motion engages in pure, unsupported speculation about the following potentially "missing" documents:

- No communications between MacDonald and the other three Glynn Plaintiffs were produced unless later forwarded to the DOL;

- No communications between MacDonald (the self-described "rabble rouser") and current or former Maine Oxy employees were produced unless later forwarded to the DOL;

- Virtually no communications with anyone prior to 2019 were produced and none before 2016 were produced unless later forwarded to the DOL, even though MacDonald was contemplating legal action as early as 2013;

- Most dammingly, MacDonald only produced 114 of the 215 [of] his communications with the DOL that the DOL produced.

In particular, the last two categories of documents engage in wholesale speculation regarding the existence of additional communications prior to 2019 or 2016, and erroneously concludes that Mr. MacDonald destroyed documents because he allegedly only produced 114 of 215 documents representing his communications with the DOL, that the DOL produced *and the Defendants are currently in possession of*.  To the extent that defense counsel explored this topic at his deposition, Mr. MacDonald testified that in general, he was much more likely to communicate with the other Class Plaintiffs, other Maine Oxy employees, etc. by telephone, not

7

by text message or email during the time periods in question. *MacDonald Dep*. at 33:22 – 34:6; 47:3 – 47:13. Mr. MacDonald also testified that any actual discrepancies were likely due to his own limitations in searching for these documents on his phone. *MacDonald Dep*. at 165:23 – 169:6.

## II. THE DEFENDANTS CANNOT DEMONSTRATE THAT THEY HAVE BEEN PREJUDICED AS THE RESULT OF MR. MACDONALD'S ALLEGED SPOILATION

"District courts in this circuit consider five factors when determining the appropriateness of sanctions for spoilation: (1) prejudice due to the evidence's destruction; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the evidence was destroyed in bad faith; and (5) the potential for abuse if no action is taken. *Vesper Maritime Limited v. Lyman Morse Boatbuilding, Inc.*, 502 F.Supp.3d 551, 563 (D.Me. 2020). However, an adverse inference "usually makes sense only where the evidence permits a finding of bad faith." *Id., citing Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 42 (1st Cir. 2017).

The Defendants' argument for spoilation sanctions fails at every turn. In the first place, as set forth above the Defendants cannot establish that any evidence was destroyed, let alone destroyed in bad faith. Their allegations suggesting that documents from Mr. MacDonald's production are "missing" are either wholly speculative or otherwise based on the existence of documents that they are already in possession of. Finally, there is no potential for abuse here. When Mr. MacDonald learned that his prior production may have been deficient, he put in the time and effort necessary to remedy the situation.

In terms of the practical importance of the evidence, Defendants offer three suggestions. First, they suggest that the "missing" evidence might show that the Class Representatives had knowledge of ERISA violations long before April 26, 2016, which Defendants contend would

8

bar their claims under ERISA's three year statute. In the first place, Mr. MacDonald testified at his deposition that he would have communicated with the class plaintiffs by telephone during this time period. *MacDonald Dep*. at 33:22 – 34:6, 47:3 – 47:13. He also testified that the first concrete information he acquired about this case was in 2019. This not surprising, considering that the Defendants have admitted to keeping the terms of the 2012 sale of the Albistons' 51% share of the company completely confidential, even forcing their ESOP valuation company to sign a non-disclosure agreement prohibiting it from sharing this information with the ESOP Trustee, Carl Paine. *Answer* ¶ 23; *Defendants' Interrogatory Answers* ¶ 3. Given the Defendant's admitted secrecy, there is literally no chance that Mr. MacDonald acquired information sufficient to trigger the three year ERISA statute of limitations in 2016.

The Defendants also suggest that the 'missing' evidence might show that "Maine Oxy employees did not share or support MacDonald's conspiracy views or his challenges to the ESOP termination," etc. This inference is wholly defeated by the fact that to date, only Carl Paine has opted out of the class. *Douglas Dec*. ¶ 23. By all appearances, the members of the class stand firmly behind Mr. MacDonald and the other Class Representatives.

Finally, the 'missing' evidence "might show that Maine Oxy employees were not subjected to threats and intimidation to sell their shares, but, instead gladly did so . . . " The class has never alleged that *all* of its members endured harassment, but the evidence is unequivocal that at least *some* of the class members were subject to threats and intimidation, including Mr. MacDonald. At his deposition, he testified that among other things, Defendant Dan Guerin harassed him regarding selling his shares back to the company on multiple occasions, telling him at one point that he was going to have his lawyers ruin Mr. MacDonald's life if he didn't sell back those shares. *MacDonald Dep*. at 21:23-22:9, 22:25-24:14, 32:8-32:16. Class

Representative Joshua Richardson testified that although he was not harassed into selling back his shares, he witnessed the effects of Defendant Guerin's harassment of Mr. MacDonald. *Deposition of Joshua Richardson* ("Richardson Dep.") at 59:9 – 60:21 ) (*Douglas Dec*. Ex H). Class Representative Douglas Johnson also testified that Defendant Guerin forced him to sell back his shares. *Deposition of Douglas Johnson* ("Johnson Dep.") at 31:6 – 36:23 (Douglas Dec. Ex. I).

### III. THIS MOTION WAS FILED IN VIOLATION OF LOCAL RULE 26(B) AND SHOULD BE DENIED ON THAT BASIS

In filing this motion, the Defendants have completely disregarded the requirements of Local Rule 26(b), which mandates that "no written discovery motions shall be filed without the prior approval of a judicial officer" and that if efforts to confer with the opposing party are unsuccessful, "the moving party shall file a Request for Hearing Re Discovery Dispute using the Court's form seeking a prompt hearing with a judicial officer by telephone or in person." As this Court is well aware, the Defendants are eminently familiar with the required procedures for litigating a discovery dispute with this Court, having filed an unseemly number of discovery hearing requests during the pendency of this case. In this instance, they declined to seek a hearing at the appropriate time, most likely because a discovery hearing would have certainly resulted in a resolution precluding them from filing the instant spoliation motion.

Based on the foregoing, the Class Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

Dated:  May 20, 2022                              Respectfully submitted,

/s/ Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS, MCDANIEL
& CAMPO LLC, PA
90 Bridge Street, Suite 100
Westbrook, ME  04092
(207) 591-5747
*E-mail: tdouglas@douglasmcdaniel.com*


/s/ Jeffrey P. Russell, Esq.
Jeffrey P. Russell, Esq.
Bloomer Russell & Beaupain
175 Exchange St.
Bangor, ME 04401
(207) 942-7110
*E-mail: jeff@bloomerrussell.com*

/s/ Lauren Thomas
Lauren Thomas, Esq.
Law Office of Lauren Thomas, Esq.
18 Wild Rose Ave.
South Portland, ME 04106
(207) 619-4149
*E-mail: laurenthomaslaw@gmail.com*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing all parties of record.


/s/ Thomas L. Douglas
Thomas L. Douglas
DOUGLAS MCDANIEL
& CAMPO LLC, PA
90 Bridge St., Suite 100
Westbrook, ME 04092
(207) 591-5747