UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ERNEST J. GLYNN, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2:19-cv-176-NT |
| | ) | |
| MAINE OXY-ACETYLENE | ) | |
| SUPPLY CO., *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**Maine Oxy Defendants' Reply on Motion
To Impose Sanctions for Spoliation**

Defendants Maine Oxy-Acetylene Supply Co. (Maine Oxy), Daniel Guerin, and Bryan Gentry (collectively, Maine Oxy Defendants) filed a motion to impose sanctions on Plaintiff Jeffrey MacDonald for spoliation. ECF No. 185 (Motion). MacDonald opposed that motion. ECF No. 200 (Opp.). The Maine Oxy Defendants submit this reply in response to that opposition and in further support of their motion to impose sanctions.

MacDonald's opposition is notable for what is missing. MacDonald submits almost no *evidence* in opposition to the motion. Instead, he submits a handful of curated emails between counsel in February–April *2022*, ECF Nos. 200-2 – 200-8; the depositions of different plaintiffs, ECF Nos. 200-9 – 200-10; and his counsel's declaration, which, in turn, does not provide any supporting evidence, ECF No. 200-1. In other words, MacDonald's opposition consists almost entirely of his counsel's 2022 characterization of the record concerning spoliation that dates back to 2013. When the Court considers the actual evidence submitted, the conclusion that substantial relevant evidence was lost becomes inescapable.

MacDonald does not dispute the long line of authority that allows the Court to impose appropriate sanctions for evidence that is lost *either* because a party failed to preserve the evidence,

*or* because a party intentionally destroyed the evidence. *See* Motion 3–4 (collecting cases). Instead, MacDonald cites only cases alleging intentional destruction of evidence, and claims that sanctions are inappropriate because he claims there is no evidence he *intentionally* destroyed evidence. *See* Opp. 6. Thus, MacDonald does not even address his admitted failure to preserve electronically-stored information (ESI). *See* ECF No. 185-9 (MacDonald Deposition (Dep.) 196) ("So I deleted my email, Peter, and I had it going through my settings."); *id.* at 201 ("I didn't understand the importance of all – a lot of this, and I can't say that I took any big steps to preserve anything."). This testimony renders, at best, misleading MacDonald's claim (Opp. 7) that he testified "unequivocally" he did not destroy "relevant" evidence (in response to scripted questions from his counsel).

MacDonald claims that this motion was filed in retaliation for his claims that Maine Oxy shredded relevant documents in this case. Opp. 1. Although patently false, it demonstrates that MacDonald knew there was a duty to preserve evidence years ago. Indeed, the Court should infer based on MacDonald's longstanding intention to file suit and his fixation on Maine Oxy's record retention practices that he intentionally deleted the missing evidence. At a minimum, his accusations thoroughly undermine the credibility of his testimony that he "didn't understand" the importance of preserving email. *See* Motion 9–10 (citing record).

MacDonald likewise does not dispute that he was planning on filing suit as far back as October 2013, and that he certainly was contemplating doing so by January 2016 when his counsel prepared his "opus" to the send to U.S. Department of Labor (DOL) detailing his claims of ERISA violations against the Maine Oxy Defendants. *See* Motion 5–6 (citing record). He does not—and cannot—dispute that his duty to preserve evidence dates back years. Thus, his failure even to acknowledge the dearth of evidence in the form of communications prior to 2019 based on a review

of all of the documents he produced is telling. *See* ECF No. 185-2 (Lia Pereira Declaration (Dec.) ¶ 22) (analyzing MacDonald's document production); *see also id*. ¶¶ 16–21, 25 (describing other missing evidence).

In arguing that there was no spoliation, MacDonald begins his discussion of the facts on February 15, 2021, when the Maine Oxy Defendants filed a motion to consolidate this case with the virtually identical lawsuit filed by the DOL. *See* Opp. 2. This means that MacDonald ignores the fact that he had only produced 81 pages of documents as part of his initial disclosures in October 2019 (including only 4 emails), and that he did not produce *any* additional documents in 2019, 2020, or 2021 in response to two document requests. *See* Motion 1–2 (citing record).

Although MacDonald's now claims that the obligation to produce documents from the *Glynn* plaintiffs was lateraled to the DOL following consolidation of the two cases, *see* Opp. 2 (citing Thomas Douglas Dec. ¶¶ 2, 4), the actual record demonstrates otherwise. When the *Glynn* plaintiffs did not produce *any* documents in response to the second document request in October 2021, MacDonald's counsel confirmed in writing *twice* that they had produced *all* of the documents in their possession and had not withheld *any* documents under a claim of privilege. ECF No. 185-5 at 3, 5. Defense counsel sent a confirming email about the telephone call with MacDonald's counsel, *id.* at 1, and he did not respond to "clarify" with any of the points now contained in his declaration about that telephone call. *See* ECF No. 200-1 (Douglas Dec. ¶ 3).

MacDonald's counsel flatly asserts that the DOL, in fact, produced the requested documents. *See* Opp. 3 (citing Douglas Dec. ¶ 5). The evidence does not support that assertion. MacDonald does not—and cannot—dispute:

- No communications between MacDonald and the other three *Glynn* Plaintiffs were produced unless later forwarded to the DOL, meaning that any communications among the four of them alone would not have been produced;

- No communications between MacDonald and current or former Maine Oxy employees were produced unless later forwarded to the DOL;
- Virtually no communications with anyone prior to 2019 were produced;
- MacDonald only produced 114 of the 215 communications between himself and the DOL that the DOL produced.

Pereira Dec. ¶¶ 4, 15–25. Although MacDonald dismisses this explication of his document production as "speculation," *see* Opp. 7, he does not point to a single document that he produced in discovery to show that this analysis of his document production is incorrect. Similarly, MacDonald's explanation that he preferred telephone communications (Opp. 7–8) doesn't explain what happened to the 101 emails to the DOL that he failed to produce.

MacDonald does not actually dispute that almost all of his documents were produced in March 2022, over two years after they were requested. Although he claims that the documents were sent "exactly as class counsel received" them, Opp. 3, he does not dispute that they were not sent in the manner MacDonald maintained them, which is what the rules require, and he does not dispute that the documents produced in early March 2022 were unusable because they lacked basic information, such recipient information. *See* Pereira Dec. ¶¶ 12–13. Thus, almost all of MacDonald's documents were not produced until March 24, 2022—a week before the end of discovery—and certainly not for the "third time" as claimed in the Opposition. *See* Opp. 4.

Despite the fact that MacDonald's document production was *over two years* late, that is not the reason for this motion. Instead, this motion was necessitated because it's now evident that MacDonald failed to preserve or intentionally deleted numerous relevant communications. MacDonald's failure to produce documents (after his counsel wrote twice to say he had produced everything) only became apparent once the DOL was compelled to produce additional documents in early 2022, and the DOL provided hundreds of communications with MacDonald that he never produced. See Motion 2 (citing record).

Rather than "raising an entirely new set of issues" in March 2022, Opp. 4, the Maine Oxy Defendants used the specific documents MacDonald actually produced at the end of discovery in March 2022 to illustrate again precisely the types of information that had never been produced, but should have been, by MacDonald, such as communications with current and former Maine Oxy employees by the self-proclaimed "rabble-rouser". *See* ECF No. 185-8 (complete email chain); ECF No. 185-13 ("rabble-rouser" email). In response, MacDonald's counsel claimed that MacDonald now has produced all of the documents in his possession. *See* ECF No. 185-8 at 1–2.

Because MacDonald claims that he has produced everything in his possession (other than the 2016 "opus" that he withheld under a claim of work product, but the DOL has now produced), this is not a discovery dispute. If MacDonald is to be believed, there is nothing to compel. In the notice filed with the Court, the Maine Oxy Defendants stated that they wanted to alert the Court concerning the spoliation issue before the end of discovery, but it was not a discovery issue:

> Because spoliation is not a discovery issue, because we do not yet have the plaintiffs' deposition transcripts, and because this issue will involve discussion of several hundred documents never produced by class plaintiffs, we seek a briefing schedule to tee this issue up for the Court's consideration.

ECF No. 157. Although MacDonald claims that Magistrate Judge Nivison "expected" the Maine Oxy Defendants to file a discovery dispute notice on this issue, *see* Opp. 5, no such order was issued and MacDonald does not provide a transcript of the hearing. Suffice it to say, our recollection of that conference differs.

This is not a discovery dispute. MacDonald's counsel has represented that MacDonald has produced everything in his possession. But what he has produced is woefully inadequate. Courts in this district do not use the discovery dispute apparatus to address spoliation concerns. *See, e.g., Vesper Maritime Ltd. v. Lyman Morse Boatbuilding, Inc.*, 502 F. Supp. 3d 551 (D. Me. 2020).

Similarly, the notion that the Maine Oxy Defendants jumped the gun by filing this motion cannot be taken seriously. They have been seeking relevant documents in this litigation since October *2019*. Although no additional documents were produced in response to document requests served in October 2019 and June 2021, they took MacDonald's counsel at his word in September 2021 that everything had been produced and that nothing had been withheld under a claim of privilege. When those representations were belied by the DOL's belated document production in January 2022, they again sought documents from the *Glynn* Plaintiffs. After MacDonald's counsel again represented in April 2022 after the end of fact discovery that MacDonald had produced everything in his possession, they filed this motion. The Maine Oxy Defendants have waited long enough.

MacDonald also takes the Maine Oxy Defendants to task for filing an "unseemly number of discovery dispute requests" in this litigation. Opp. 10. It is unfortunate that we have been forced to file these discovery dispute requests, but they were necessitated by Plaintiffs' repeated failure to comply with their discovery obligations. The Maine Oxy Defendants have prevailed in whole or in part on every discovery dispute they filed in this case; in contrast, the sum total of the discovery disputes filed by Plaintiffs is that the Court ordered the production of a single document that the Maine Oxy Defendants had withheld as irrelevant. ECF No. 161.

In the final analysis, MacDonald's deposition testimony, coupled with a careful review of the documents he produced, leads indubitably to the conclusion that he did nothing to preserve relevant evidence long after he began contemplating litigation in 2013, that a reasonable inference can be drawn that he destroyed relevant evidence, that numerous documents were lost or destroyed, and that the Maine Oxy Defendants were prejudiced by this spoliation. *See* Motion 6–10. MacDonald attempts to distract attention from his failings by alleging that Maine Oxy kept secret

the details of a 2012 sale of its stock, and that Guerin coerced Plaintiffs into surrendering their stock (Opp. 8–9), but neither of these allegations have anything to do with *MacDonald's* failure to preserve relevant evidence. Once the Court applies the undisputed law to the actual record evidence, it should be apparent that sanctions are in order.

The Maine Oxy Defendants respectfully request that their motion to impose sanctions for spoliation be granted.

Dated: April 27, 2022                   Respectfully submitted,

                                        /s/ Peter J. Brann
                                        Peter J. Brann
                                        pbrann@brannlaw.com
                                        Stacy O. Stitham
                                        sstitham@brannlaw.com
                                        Eamonn R.C. Hart
                                        ehart@brannlaw.com
                                        BRANN & ISAACSON
                                        184 Main Street, 4th Floor
                                        Lewiston, ME  04243-3070
                                        (207) 786-3566

                                        E. Thomas Henefer
                                        eth@stevenslee.com
                                        STEVENS & LEE
                                        111 North Sixth Street
                                        P.O. Box 679
                                        Reading, PA 19603
                                        (610) 478-2000

                                        *Attorneys for Defendants*
                                        *Maine Oxy-Acetylene Supply Co.*
                                        *Daniel Guerin*
                                        *Bryan Gentry*