**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| ERNEST J GLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Docket No. 2:19-cv-00176-NT |
| ) | |
| MAINE OXY-ACETYLENE ) | |
| SUPPLY CO., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Before me is the Class Plaintiffs' unopposed motion for preliminary approval of the parties' settlement agreement. Unopposed Mot. for Prelim. Approval of Class Action Settlement ("**Mot. for Prelim. Approval**") (ECF No. 210). For the reasons stated below, the motion is **GRANTED**.

**BACKGROUND**

This case involves a dispute surrounding an employee stock ownership plan ("**ESOP**") at Maine Oxy-Acetylene Supply Company ("**Maine Oxy**"), which supplies welding equipment and industrial and specialty gases at retail locations throughout New England and at one location in Canada. Second Am. Class Action Compl. ("**SAC**") ¶¶ 1, 12 (ECF No. 52). The Albiston family established the ESOP in 2004 when they were Maine Oxy's sole shareholders to allow employees "to share in the growth and profits of [Maine Oxy] and to enable them to save and invest" through the ESOP. SAC ¶¶ 13–14; Defs.' Answer ¶ 14 (ECF No. 58); Maine Oxy ESOP § 1.2 (ECF

No. 46-6). The ESOP's profit-sharing component was intended to be an employee incentive and retirement plan. SAC ¶ 14.

By the end of 2006, Bruce Albiston had sold forty-nine percent of the shares in Maine Oxy to the ESOP, while he and his son retained the other fifty-one percent. SAC ¶¶ 14–16; Defs.' Answer ¶¶ 14–16 (ECF No. 58). In 2012, the Albistons sold their remaining fifty-one percent to Defendants Daniel Guerin and Bryan Gentry for $654.62 per share. SAC ¶¶ 20–23; Defs.' Resp. to Pls.' Req. for Produc. of Docs. No. 4 (ECF No. 38-1). Then, in 2013, the Defendants terminated the ESOP and reacquired the ESOP's forty-nine percent for $134.92 per share, giving them ownership of one hundred percent of the Maine Oxy's stock. SAC ¶¶ 1, 42–43, 47, 53, 56; Defs.' Resps. to Pls.' Req. for Produc. of Docs. No. 5.

The Class Plaintiffs—Ernest Glynn, Jeffrey MacDonald, Doug Johnson, and Joshua Richardson—are four former employees of Maine Oxy who participated in the ESOP. SAC ¶¶ 2–5. They filed this class action lawsuit in April of 2019 alleging that the Defendants violated their fiduciary duties under the Employee Retirement Income Security Act ("**ERISA**"). SAC ¶¶ 1, 75–134. In particular, they contend that the Defendants misrepresented and/or artificially depressed the value of the employees' shares so that the Defendants could purchase the employee stock at a steep discount. SAC ¶ 1. The Defendants maintain that they did not breach their fiduciary duties because $134.92 per share was a fair price based upon a third-party valuation of the shares in 2012. Mot. for Prelim. Approval 1–2; Daniel Guerin Decl. ¶ 27 (ECF No. 46-1).

The Secretary of Labor for the U.S. Department of Labor, Martin J. Walsh, is also a plaintiff in this action. The Department of Labor brought an action in this Court on September 15, 2020 to void the buyback of the shares owned by the ESOP. *See Walsh v. Maine Oxy-Acetylene Supply Co.*, No. 2:20-cv-00326-NT, 2021 WL 2535942 (D. Me. June 21, 2021). Judge Nivison consolidated the cases for discovery and for trial. Order on Mots. to Consolidate and Scheduling Order (ECF No. 95); Order on Defs.' Mots. to Consolidate Cases (ECF No. 162).

On November 5, 2020, I certified a Rule 23(b)(3) class consisting of "all Maine Oxy employees who participated in the company ESOP and who sold their shares back to Maine Oxy after the Albistons sold their 51% interest in the company." Order on Pls.' Mot. to Certify Class (ECF No. 66). The parties then engaged in a lengthy and contested discovery period. Mot. for Prelim. Approval 2; *see, e.g.*, ECF Nos. 74, 105–18, 121–22, 125–28, 131–37, 139–40, 146–57, 160–61, 163–65, 176. On July 7, 2022, however, the parties reported the matter settled. Notice of Settlement (ECF No. 205).

The parties now have submitted their settlement agreement to the Court seeking preliminary approval of the agreement and the scheduling of a final approval hearing. Class Action Settlement Agreement ("**Settlement Agreement**") (ECF 210-1). Under the Settlement Agreement, Maine Oxy will pay a total of $6,330,000, including attorneys' fees and incentive payments to the class representatives, through a common fund. Settlement Agreement §§ IV.A; IV.C. The funds are allocated to class members based on the number of shares allocated to them under the ESOP as of November 1, 2013, less their pro rata share of the class

3

representatives' service award payments and attorneys' fees and costs. Settlement Agreement § IV.C.2. The class representatives each will receive a service award of $7,500, and class counsel is asking for an award of up to $1,200,000 in attorneys' fees. Settlement Agreement §§ IV.C.2; IV.F. The Defendants' fiduciary liability carrier will also pay Secretary Walsh $630,000 in penalties. Settlement Agreement § IV.A. In return, the Plaintiffs agree to release their claims. Settlement Agreement § IV.C.2(a).

The parties have also submitted a proposed Notice of Class Action Settlement for my approval. Notice of Class Action Settlement ("**Notice**") (ECF No. 210-2). The Notice explains that the $6,330,000 figure represents the value that the Class's expert witness found the stock to be worth "in 2013 ($400 per share), multiplied by the number of ESOP shares in 2013 ($400.00 x 24,500 shares = $9,800,000), less the $3.3 million already paid by the Defendants for the ESOP stock in 2013 ($9,800,000 - $3,300.000 = $6,500,000)." Notice 2. The 6.5-million-dollar figure was then reduced by $200,000—the value of ESOP shares held by Defendants Daniel Guerin and Carl Paine. Notice 2. The Notice then informs recipients that they can either: (1) do nothing and remain in the class action; or (2) object to the Settlement by filing a written objection with the Clerk of Court's Office within sixty days from the date of the Notice mailing. Notice 2.

## DISCUSSION

### I.  Legal Background

The parties seek settlement approval under Rule 23(e) of the Federal Rules of Civil Procedure. Under Rule 23(e), a two-step notice-then-approval procedural

4

framework applies to proposed class settlements. At the first stage—notice to the class—the parties propose a settlement and provide the court with sufficient information to determine whether notice should be provided to all putative class members. Fed. R. Civ. P. 23(e)(1). The second stage—approval of the proposal—occurs after notice to all class members, a hearing, and a court determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

At the first stage, I must direct notice if the parties show that I will likely be able to approve the settlement proposal and certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). "A proposed settlement of a class action may be given preliminary approval where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Trombley v. Bank of Am. Corp.*, No. 08-cv-456-JD, 2011 WL 3273930, at *5 (D.R.I. July 29, 2011). "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.' " *Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at *10 (D. Me. Nov. 5, 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). However, "[i]f the parties negotiated at arm's length and conducted sufficient

5

discovery, the district court must presume the settlement is reasonable." *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009). Where, as here, I have already approved the class, the only information normally necessary "is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1) Advisory Committee Note to 2018 Amendments; *Youth Justice Coals. v. City of Los Angeles*, No. 2:16-cv-07932, 2020 WL 9312377, at *1 (C.D. Cal. 2020).

The second stage of the Rule 23(e) two-step is the actual approval of the proposed settlement agreement. This occurs after all class members receive notice and there is a fairness hearing to determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In deciding whether the "fair, reasonable, and adequate" standard is met, Rule 23(e)(2) requires me to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this District also consider other non-exclusive factors such as (1) the proposed settlement compared "with the likely result of litigation"; (2) the stage of the litigation and the amount of discovery completed; (3)

the reaction of the class to the settlement; (4) the quality of counsel; (5) the conduct of the negotiations; and (6) the prospects of the case, including the risk, complexity, expense, and duration." *O'Connor v. Oakhurst Dairy*, No. 2:14-00192-NT, 2018 WL 3041388, at *2 (D. Me. June 19, 2018).

## II. Application

At this first stage, the Plaintiffs have demonstrated that preliminary approval of the proposed settlement and approval of the proposed Notice are warranted. As to whether I would likely be able to "certify the class for purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1)(B)(ii), I have already approved the class and the proposed settlement does not call for any change in the class. *See* Order on Pls.' Mot. to Certify Class 22; Mot. for Prelim. Approval 2; Fed. R. Civ. P. 23(e)(1) Advisory Committee Note to 2018 Amendments.

As to whether I would likely give final approval to the settlement, I look to whether the proposed settlement is "fair, reasonable, and adequate" and assess the factors found in Fed. R. Civ. P. 23(e)(2). It appears that the class representatives and counsel have adequately represented the class. As I noted in my order certifying the class, counsel have experience litigating claims in federal court, have spent years working on this case, and have acted with professional competence and integrity. Order on Pls.' Mot. to Certify Class 16–17. In the almost two years since that order, class counsel have worked in tandem with the Department of Labor and have completed "at least twenty-one depositions" and exchanged "over thirty-five thousand pages of documents relating to key transactions and metrics in this case." Mot. for Prelim. Approval 7. *See Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass 2000) (citing

7

*Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp, 34, 38 (D.P.R. 1993)) (noting the importance of ascertaining whether there has been sufficient evidence obtained through discovery in determining the adequacy of the settlement).

The settlement proposal appears to have been negotiated at arm's length. The parties worked with a private mediator for five days and only reached agreement after the mediator saw the parties were not able to do so on their own and made his own proposal. Mot. for Prelim. Approval 8–9. Because I find that the parties negotiated at arm's length and conducted sufficient discovery, I presume that the settlement is reasonable. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32–33.

This presumption is bolstered by the fact that the relief provided for the class appears adequate. After over three years of litigation, the parties have reached an agreement that will pay over $6 million to the Plaintiffs. To bring this case to trial would add significant time and expense to this already drawn out and costly litigation, and the Plaintiffs bear the risk of receiving no money at all. The sum settled on also "appears to fall within the range of possible approval." *Trombley*, 2011 WL 3273930, at *5. The parties' experts' valuations of Maine Oxy Stock in 2013 ranged from $262 per share to $467.57 per share. Mot. for Prelim. Approval 5. The $400 per share valuation used to reach the settlement figure is within this range and is almost exactly what the Class Plaintiffs' expert would have testified to at trial. The portion designated for attorneys' fees is 19% of the total settlement, which is generally considered reasonable in a class action resulting in a common fund

8

settlement. *See, e.g., In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Pracs. Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *8–9 (D. Me. Feb. 10, 2016) (noting that courts in the First Circuit generally award fees in such cases within the range of 20–30%, with 25% as a benchmark).

The proposed settlement treats class members equitably relative to each other because payment is based on the number of shares allocated to the class members under the ESOP less their pro rata share of the class representative payments and attorneys' fees and costs. Settlement Agreement § IV.C.2. Taking into account all of the above, the proposed relief is likely a fair, reasonable, and adequate resolution of the case. As such, preliminary approval is justified.

Finally, because the parties have shown that I will likely be able to grant final approval of the proposal, I may direct notice to the class. *See* Fed. R. Civ. P. 23(e)(1) Advisory Committee's Note to 2018 Amendments. Here, the Notice is clear, concise, and states in plain language the certified class definition, the class claims, how to request exclusion from the class, and the binding effect of the class judgment. *See* Fed. R. Civ. P. 23(c)(2)(B); Notice 1–4. Given this, I approve the proposed Notice to the class.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Class Plaintiffs' unopposed motion. The proposed class notice of settlement attached to this order is approved. The clerk is directed to schedule a final approval hearing.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 14th day of September, 2022.