UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ERNEST J. GLYNN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:19-cv-00176-NT |
| | ) |
| MAINE OXY-ACETYLENE SUPPLY CO., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

Pursuant to Local Rule 7(b) and Federal Rule of Civil Procedure 23(e), Plaintiffs Ernest J. Glynn, Jeffrey T. MacDonald, Doug Johnson and Joshua Richardson, on behalf of themselves and all others similarly situated, respectfully submit their Motion for Final Approval of Class Action Settlement and state as follows.

**INTRODUCTION**

On August 26, 2022, the Class Plaintiffs filed their *Unopposed Motion for Preliminary Approval of Class Action Settlement* (ECF No. 210), seeking preliminary approval of the settlement achieved with all defendants and approval of the notice of settlement to be sent to all class members (the "Class Notice"). On September 14, 2022 this Court granted the Class Plaintiffs' motion (ECF No. 211) and approved the proposed Class Notice.

For the reasons set forth below, the Class Plaintiffs respectfully request that the Court approve this proposed class action settlement pursuant to Federal Rule of Civil Procedure 23(e). Consistent with the Court's preliminary findings in its September 14, 2022 Order, the proposed settlement is a fair and reasonable compromise of the claims asserted in this litigation.

I. **THE NOTICE TO CLASS MEMBERS**

The Class Notice was sent out to all class members via first class mail on September 23, 2022. *Declaration of Thomas L. Douglas, Esq.* ("Douglas Declaration"), ¶ 2. A true and accurate copy of the Class Notice in the form in which it was issued to class members is attached as Exhibit A.

The class totals 156 members. As a result of the first mailing, 14 of the 156 notices mailed to class members were returned to Class Counsel as undeliverable. *Id.* In order to locate these individuals, Class Counsel retained a vendor to conduct a search in the National Change of Address Registry and has also followed the guidance and procedures set forth in the United States Department of Labor Field Assistance Bulletin No. 2014-01. *Id.* ¶ 3. These efforts to locate missing class members have been largely successful – at this point all but seven class members have been located and provided a copy of the Class Notice. *Id.*[1]

In its September 14, 2022 Order, this Court approved the proposed Class Notice, finding that it satisfies the requirements of Fed.R.Civ.P. 23(c)(2)(B). Providing notice by United States mail is expressly permitted by Rule 23(c)(2)(B) and is otherwise consistent with the standard set forth by the United States Supreme Court and the First Circuit. "Individualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances." *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 218 (D.Me. 2003), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). "Individual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice," but "it

---

[1] The class includes five members who are deceased. Of the seven class members who have not yet been contacted, four have been confirmed as deceased. Class Counsel has attempted to locate and contact the heirs and/or estates of these individuals. To date, one of the five estates has been located. *Douglas Declaration* ¶ 4.

2

is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members." *Reppert v. Marvin Lumber and Cedar Co., Inc.*, 359 F.3d 53, 56 (1st Cir. 2004), *quoting Hallman v. Pa. Life Ins. Co.*, 536 F.Supp. 745, 748-749 (N.D.Ala. 1982).

As set forth above, the Class Plaintiffs' efforts to notify absent class members was quite successful – the Class Notice has now been distributed to 95% of the Class. *See Nilsen v. York County*, 382 F.Supp. 2d 206, 211 (D.Me. 2005) (Notice deemed adequate where mailed notices reached approximately 70% of putative class members).

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

"Compromises of disputed claims are favored by the courts." *William v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durrett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). In a class action, the "court plays the important role of protector of the [absent class members'] interest in a sort of fiduciary capacity." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). The ultimate determination whether a proposed class action settlement warrants approval is up to the discretion of this Court. *Protective Comm. for Indep. Shareholders of TM Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

Once the class has been provided notice of the settlement and an adequate opportunity to respond, raise objections, etc., the court then holds a fairness hearing where the parties must demonstrate that the proposed settlement is fair, reasonable and adequate. *Michaud*, 2015 WL 1206490, at *8, *citing* Manual for Complex Litigation § 21.634; Fed.R.Civ.P. 23(e)(2); *Scovil v. FedEx Ground Package Sys., Inc.*, 2014 WL 1057079 (D.Me. March 14, 2014). Pursuant to Rule 23(3)(2), the District of Maine utilizes the following factors in evaluating a proposed class action settlement:

3

      (A) Whether the class representatives and class counsel have adequately represented the class

      (B) Whether the proposal was negotiated at arm's length;

      (C) Whether the relief provided for the class is adequate, taking into account:

          (i)      The costs, risks, and delay of trial and appeal;

          (ii)     The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

          (iii)    The terms of any proposed award of attorney's fees, including timing of payment; and

          (iv)    Any agreement required to be identified under Rule 23(e)(3); and

      (D) Whether the proposed settlement treats class members equitably, relative to one another.

Fed.R.Civ.P. 23(e)(2). The District of Maine also considers other non-exclusive factors such as: 1. a comparison of the proposed settlement with the likely result of litigation; 2. the stage of litigation and the amount of discovery completed; 3. the reaction of the class to the settlement; 4. the quality of counsel; 5. the conduct of the negotiations; and 6. the prospects of the case, including risk, complexity, expense and duration. *Scovil*, 2014 WL at *2; *O'Connor v. Oakhurst Dairy*, 2018 WL 3041388 (D.Me. June 19, 2018).

### A. Class Counsel and the Class Representatives Have Adequately Represented the Class

To date, Class Counsel have vigorously litigated this matter for over three years in the face of stiff and unrelenting opposition - as the Court is aware, nearly every aspect of this case has been vigorously contested by the Defendants and their attorneys. During the course of these proceedings, Class Counsel has achieved class certification, litigated numerous discovery disputes, successfully added Defendant Bryan Gentry to the case, hired two expert witnesses and otherwise successfully navigated this rather contentious case into a position where settlement

4

could be achieved.  As set forth in the Class Plaintiffs' Motion for Preliminary Approval, to date the parties have conducted at least twenty-one depositions, several taking place over the course of multiple days, and have exchanged over thirty-five thousand pages of documents relating to the key transactions in this case.

In its order granting Class Certification, this Court found that Class Counsel were qualified to represent the Class in this matter, citing their lengthy investigation of the Class's potential ERISA claims, their experience litigating claims in federal court, their success in achieving class certification, the overall presentation of the Class's claims, the fact that they have adequate resources to litigate this matter and their professional competence and integrity.  *Order on Class Certification* (ECF No. 66) pp. 16-17.  In the Court's September 14, 2022 Order granting preliminary approval of the Settlement, this Court again noted that "counsel have experience litigating claims in federal court, have spent years working on this case, and have acted with professional competence and integrity."  Class Counsel respectfully submits that the fairly extensive litigation record in this case fully supports the Court's previous determination that their representation of the Class has been adequate.

The Class Representatives - Ernest Glynn, Josh Richardson, Douglas Johnson and Jeff MacDonald - have adequately represented the Class.  These four named plaintiffs researched and initiated this lawsuit, retained Class Counsel, assisted with discovery requests and responses, sat for depositions and participated in settlement discussions, including without limitation attending a judicial settlement conference and a nine hour mediation in Boston, MA.  *Douglas Declaration* ¶ 5.  With no exceptions, all four Class Representatives have remained fully engaged and involved in this litigation since its inception.  *Id.*  At all relevant times, these gentlemen insisted on obtaining the best possible recovery for the Class, regardless of the circumstances.  *Id.* ¶ 6.

### B. The Settlement Was Negotiated At Arm's Length

As this Court is aware, on Friday, July 1, 2022 the parties, including the Department of Labor, attended private mediation with Robert Meyer, Esq., an experienced and highly-skilled mediator associated with JAMS. In advance of the mediation, the parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. The Settlement was achieved as the result of good faith, arms-length negotiations between and among all parties in this action and the *Walsh* action, spanning nearly 10 hours on July 1 and subsequent efforts over the July 4 holiday weekend and the following Tuesday (July 5) to resolve the case.

As set forth in detail in the Class Plaintiffs' Motion for Preliminary Approval, the negotiations that led to settlement were conducted at arms-length, were not the product of collusion, etc. The Settlement is the product of Attorney Meyer's "mediator's proposal," which was circulated at the close of the July 1 mediation when it became clear that the parties would *not* reach agreement in the ordinary course. The First Circuit has previously held that negotiating at arm's length creates a presumption in favor of settlement approval. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *In re: Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st. Cir. 2009) ("[i]f the parties negotiated at arms length and conducted sufficient discovery, the district court must presume the settlement is reasonable.").

### C. The Relief Provided For the Class is Adequate

#### 1. The Settlement is Adequate In Light of the Costs, Risks and Delay of Trial and Appeal

The Settlement calls for the Defendants to pay 6.3 million dollars to the class members, for an aggregate total of 9.6 million dollars paid to the ESOP shareholders (including the 3.3 million paid to Class Members in 2013). This settlement is certainly reasonable when viewed

6

against the possibility that at trial, the Class could conceivably recover less than the settlement amount, or perhaps nothing at all.

At trial, the most important metric to be considered by this Court is the correct value of the class members' ESOP shares. As set forth in the Class Plaintiffs' Motion for Preliminary Approval, if this case proceeded to trial, the Court would likely hear evidence supporting a wide-range of possible valuations – some of which are far less favorable to the Class than the Settlement. Most importantly, there have been three expert opinions proffered by the parties – the Defendants' expert contends that the proper ESOP share value was between $262.00 and $340.00, the Class Plaintiffs' expert set the value at $400.00 and the DOL's expert would have opined that the correct value was $467.57. In addition to the experts, it was also anticipated that at trial, the Court would likely hear testimony from representatives of Atlantic Management Company ("AMC") who purport to stand by their valuation of the ESOP shares as of December 31, 2012 at $134.92 per share based on an overall value for 100% of Maine Oxy's equity at $8.8 million. If the Court were to credit this testimony, the Class Plaintiffs would be deprived of any recovery resulting from the defendants' underpayment for their ESOP shares.

The Court would also likely hear evidence concerning another, contemporaneous, transaction in November 2013, immediately after the ESOP was terminated, when the defendants allege that Maine Oxy sold approximately one-eighth of the company's shares to Patrick Heffernan for $1 million, a figure the Defendants claim supports AMC's conclusion that Maine Oxy's total equity value was $8.8 million. Finally, if the case proceeds to trial, the Court may hear evidence concerning the Department of Labor's March 2019 "voluntary compliance" letter to Defendant Guerin which alleged that the ESOP participants were underpaid by $3.059 million, a figure far lower than the settlement. This figure was the product of calculations of two of the

7

Department's financial specialists (one is the Department's Chief of the Division of Financial Investigations while the other is a Senior Technical Advisor and the Department's ESOP National Project Coordinator).

This has been a vigorously contested case, to say the least. Given the number of both fact and expert witnesses that would likely testify at trial and the complexity of the claims at issue, a trial in this matter would be both lengthy and expensive. As outlined above, at trial Court would likely hear evidence supporting a range of possible valuations, some of which could theoretically result in a finding of no underpayment or an underpayment totaling less than the value obtained for the class members through the Settlement. Moreover, given the nature of the claims and the amounts at stake, the likelihood of appellate practice following summary judgment and/or trial is also substantial.

Given the risk of a diminished recovery, the substantial expenses that will be incurred and the near certainty of prolonged appellate practice if this case is not resolved, the proposed settlement is fair and reasonable.

### 2. The Proposed Method of Distributing Relief to the Class Is Effective

The proposed Settlement Agreement filed in support of the Class Plaintiffs' Motion for Preliminary Approval (ECF No. 210.1) creates a common settlement fund of $6,330,000.00 to be distributed to the Class and Class Counsel in two installments. The first installment of $2,370,000.00 is due within five days of the Final Approval Date as defined in the Agreement.[2] Pursuant to the terms of the Agreement, following this Court's September 14, 2022 Order granting preliminary approval, Sarah A. McDaniel of Douglas McDaniel & Campo LLC, PA was named escrow agent by the parties and the first installment payment is now being held in

---

[2] The Final Approval Date is defined in the Settlement Agreement as the date when "the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceeding for review has expired."

escrow by Attorney McDaniel subject to an instruction letter executed by all parties. *Douglas Declaration* ¶ 7. The parties have agreed to employ Rust Consulting as the settlement administrator in this matter. *Id.* ¶ 8. Within 5 days after the Final Approval Date, Attorney McDaniel will wire transfer the first installment to Rust Consulting for distribution to the class members, less one half of any attorney fees and costs awarded to Class Counsel by the Court.

The second installment payment of $3,960,000.00 is due to be paid on the later of August 15, 2023 or 30 days following the Final Approval Date. Per the express terms of the Settlement Agreement, this installment shall be forwarded directly to Rust Consulting for distribution to class members, less the second half of any award of attorney fees and costs, which shall be forwarded directly to Class Counsel.

As set forth above, Class Counsel has now located 149 of 156 class members, which is approximately 95% of the class, and confirmed their mailing addresses. Accordingly, it is anticipated that Rust Consulting's efforts to distribute the settlement proceeds to class members will be highly effective.

### 3. The Terms of Any Proposed Award of Attorney Fees, Including Timing of Payment

As set forth in detail in Class Counsel's Petition for Attorney fees, Class Counsel is seeking an award of 1.2 million dollars, which constitutes 19% of the total settlement, for attorney fees and costs. While the contingency fee agreements signed by the Class Representatives support an award of up to one-third of the Class's total recovery, Class Counsel opted for a lower percentage in order to maximize the net award to individual class members and to otherwise ensure fairness. *Douglas Declaration* ¶ 9. As this Court has recognized, an award of one-third of the total recovery is standard in contingent fee cases. *Nilsen v. York County*, 400 F.Supp. 2d 266, 279 (D.Me. 2005); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc.,*

9

*Fair Debt Collection Pracs. Act* (FDCPA) *Litig.*, No. 2:13-MD-2426-DNH, 2016 WL 543137, at *8-9 (D.Me. Feb. 10, 2016) (this Court observed that in the First Circuit, contingent fee awards in these types of cases are typically within the range of 20-30%, with 25% as a benchmark). Accordingly, the 19% recovery for attorney fees and costs proposed by Class Counsel is eminently fair and reasonable.

### D.  The Proposed Settlement Treats Class Members Equitably

As noted in this Court's September 14, 2022 Order, the proposed settlement is entirely equitable with respect to the individual class members. Each class member's recovery will be determined by the number of shares they returned to Maine Oxy in 2013 multiplied by the adjusted share price ($400 per share - $134.92 previously paid to class members in 2013 = $276.26 per share), less each class member's pro-rata share of attorney fees, costs and any incentive awards awarded to the Class Representatives.

### E.  The Other Non-Exclusive Factors Support Approval of The Proposed Settlement

The Class Plaintiffs' position with respect to the additional non-exclusive factors that have not yet been addressed above is as follows.

#### 1.  The Proposed Settlement Compared With the Likely Result of Litigation

As set forth above, the expert valuations of stock ranged from $262.00 to $467.57 per share. The settlement amount represents the precise value that the Class Plaintiffs' expert would have testified to at trial ($400.00 per share x 24,500 shares = 9.8 million), less the amount paid to class members in 2013 (9.8 million – 3.3 million = 6.5 million) and approximate value of the stock held by Daniel Guerin and Carl Paine (6.5 million - $200,000.00 = 6.3 million), who are the only two ESOP members to date who have opted out of the class. Accordingly, 6.3 million dollars is well within the scope of possible awards at trial and Class Counsel firmly believes that

10

this settlement is fair and reasonable. *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D.Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

### 2. The Stage of Litigation and the Amount of Discovery Completed

This case has now been pending for over 3 years, discovery is closed and prior to settlement, the parties were preparing to litigate cross motions for summary judgment. The discovery in this case has been extensive – the parties have conducted at least twenty-one depositions, several taking place over the course of multiple days, and have exchanged over thirty five thousand pages of documents relating to the key transactions and metrics in this case. As stated in Class Counsel's previous filings, at this point the facts underlying the parties' claims and defenses have been thoroughly explored.

### 3. Reaction of the Class to the Settlement

As set forth above, as of this filing the Class Notice has reached 95% of the individual class members. Pursuant to this Court's September 14, 2022 Order, class members were afforded sixty days to submit an objection to the settlement. As of this filing, no objections have been received by Class Counsel. *Douglas Declaration* ¶ 10. To the extent that Class Counsel has received feedback from class members, the response to the settlement has generally been positive. *Id.*

4. **Quality of Counsel**

As set forth above, this Court has found on two previous occasions that Class Counsel has adequately represented the Class. See *Order on Class Certification* (ECF No. 66) pp. 16-17; *Order on Motion for Preliminary Approval of Class Action Settlement* (ECF No. 211) p. 7.  Class Counsel respectfully suggests that the fairly extensive litigation record in this case supports the conclusion that their representation of the class has been adequate.

WHEREFORE, Class Counsel respectfully requests that this Court grant the Class Plaintiffs' Motion for Final Approval of Class Action Settlement, and grant such other relief as this Court deems appropriate under the circumstances.

Dated:  November 23, 2022                Respectfully submitted,

/s/ Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS, MCDANIEL
& CAMPO LLC, PA
90 Bridge Street, Suite 100
Westbrook, ME  04092
(207) 591-5747
*E-mail: tdouglas@douglasmcdaniel.com*

/s/ Jeffrey P. Russell, Esq.
Jeffrey P. Russell, Esq.
Bloomer Russell & Beaupain
175 Exchange St.
Bangor, ME 04401
(207) 942-7110
*E-mail: jeff@bloomerrussell.com*

/s/ Lauren Thomas
Lauren Thomas, Esq.
Law Office of Lauren Thomas, Esq.
18 Wild Rose Ave.
South Portland, ME 04106
(207) 619-4149
*E-mail: laurenthomaslaw@gmail.com*

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing all parties of record.

/s/ Thomas L. Douglas
Thomas L. Douglas
DOUGLAS MCDANIEL
& CAMPO LLC, PA
90 Bridge St., Suite 100
Westbrook, ME 04092
(207) 591-5747