UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ERNEST J. GLYNN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00176-NT |
| | ) | |
| MAINE OXY-ACETYLENE SUPPLY CO., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**UNOPPOSED PETITION FOR ATTORNEY FEES, EXPENSE REIMBURSEMENT AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**

The Class Plaintiffs respectfully move this Court for an Order awarding Class Counsel 1.2 million dollars, which constitutes 19% of the total settlement, for attorney fees and reimbursement of case expenses, and incentive awards of $7500.00 each to the four Class Representatives. As set forth below, the requested amounts for attorney fees, case expenses and incentive payments are fair and reasonable, and otherwise entirely consistent with the standards utilized in this Court and the First Circuit.

Class Members have been notified of Class Counsel's intent to seek an award of 1.2 million dollars in attorney fees and costs per the Class Notice, which has now reached 95% of the class members, and to date no objections have been filed, nor do Defendants oppose this motion. Accordingly, the Class Plaintiffs respectfully request that this Court issue an Order awarding the relief requested in this Petition.

## ARGUMENT

### I. THE REQUESTED ATTORNEY FEES AND REIMBURSEMENT FOR CASE EXPENSES ARE FAIR AND REASONABLE

It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); see also *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 305 n. 6 (1st Cir. 1995) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs.").

In the First Circuit, the preferred method of assessing attorney fees in class action settlements is *via* a percentage of the common fund. *Scovil v. Fedex Ground Package System, Inc. d/b/a FedEx Home Delivery*, 2014 WL 1057079 at *5 (D.Me. March 14, 2014) ("In a settled class action, the First Circuit does not require [the Court] to use a lodestar analysis, but allows a percentage-of-funds approach to assessment of attorney fees."); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 215 (D.Me. 2003) *citing In re Thirteen Appeals*, 56 F.3d at 307. With respect to this approach, one court in this Circuit has noted the following:

> By assessing attorneys' fees and litigation expenses against a common fund, the court spreads these costs proportionately among those benefitted by the suit. Moreover, providing adequate compensation encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one rather than settling lower and earlier than would be in the best interests of the class members they represent.

*In re Tyco International Multidistrict Litigation*, 535 F.Supp. 2d 249, 265 (D.N.H. 2007).

In *Nilsen v. York County*, 400 F.Supp. 2d 266, 278 (D.Me. 2005), this Court adopted the "market mimicking" approach set forth by the Seventh Circuit in *In re Synthroid Mktg.*

*Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) for assessing the reasonableness of attorney fees in the context of class action settlements. Pursuant to this approach, courts endeavor to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at this time." *Id*., *citing Synthroid*, 264 F.3d at 718. Accordingly, an award of fees in this case should be consistent with a fee reasonably expected by counsel in a private transaction, *Nilsen*, 400 F.Supp.2d at 276, *i.e*. the market price for legal services in light of the risk of nonpayment and the normal market rate of compensation at that time. *Synthroid*, 264 F.3d at 718.

### A. Class Counsel's Fee Requests Is Entirely Consistent With the Applicable Market Price for Legal Services

The requested award to Class Counsel of 1.2 million dollars, from which Class Counsel will both recover their fees *and* reimburse themselves for case expenses, is eminently reasonable in light of the typical market price for comparable services. Class Counsel has litigated a substantial number of contingent fee cases and is aware that the typical contingent fee is one-third of the gross award to the Plaintiff, although some contingent fee arrangements run as high as 40%. *Declaration of Thomas L. Douglas, Esq*. ("Douglas Declaration") ¶ 3. This Court has previously observed that a one-third contingency fee is "the general standard in personal injury litigation." *Nilsen*, 400 F.Supp.2d at 276.

All four Class Representatives executed contingent fee agreements in this case which allow Class Counsel to recovery up to one-third of the gross settlement amount. *Douglas Declaration* ¶ 4. These agreements constitute evidence of "what the market rate is" in this context. *Scovil*, 2014 WL at *5. Moreover, contingent fee awards in similar cases

demonstrate that Class Counsel's request for a 19% award is entirely consistent with the market. In *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Pracs. Act* (FDCPA) *Litig.*, No. 2:13-MD-2426-DNH, 2016 WL 543137, at *8-9 (D.Me. Feb. 10, 2016), this Court observed that in the First Circuit, "courts typically award fees "in the range of 20% -30%, with 25% as a benchmark" *citing Latorraca v. Centennial Techs, Inc*., 834 F.Supp. 2d 25, 27-28 (D.Mass 2011) (collecting cases). In *Nilsen*, this Court noted the following with respect to typical class action fee awards:

> Median fee awards in other class actions generally . . . range within a few percentage points on either side of 30%. Thus, a survey of 1,120 common fund class actions found that the median award of attorney fees and expenses was 31.6% of the fund for cases in which the class recovery ranged from $3 million to $5 million. Stuart J. Logan *et. al*., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003). According to a recent Federal Judicial Center study of 621 class actions, an award of 29% for attorney fees and expenses was "typical." Thomas E. Willging & Shannon R. Wheatman, An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation 52 (2005). An earlier Federal Judicial Center study found that median fee rates "ranged from 27% to 30%." Thomas E. Willging *et. al*., Empirical Study of Class Actions in Four Federal District Courts 69 (1996).

**B. The Quantity and Quality of Class Counsel's Work, Risk of NonPayment and the High Stakes in this Case All Support Class Counsel's Requested Award**

In *Nilsen*, this Court indicated that the market rate for legal services is subject to adjustment for quality of attorney performance, the amount of work expended and the stakes of the case. *Nilsen*, 400 F.Supp.2d at 276. In this case, an evaluation of these factor supports Class Counsel's requested award.

**1. Quality of Class Counsel's Work**

To date, Class Counsel have vigorously litigated this matter for over three years in the face of stiff and unrelenting opposition - as the Court is aware, nearly every aspect of this case has been vigorously contested by the Defendants and their attorneys. During the course of these proceedings, Class Counsel has achieved class certification, litigated numerous discovery disputes, successfully added Defendant Bryan Gentry to the case, hired two expert witnesses and otherwise successfully navigated this rather contentious case into a position where settlement could be achieved.

In its order granting Class Certification, this Court found that Class Counsel were qualified to represent the Class in this matter, citing their lengthy investigation of the Class's potential ERISA claims, their experience litigating claims in federal court, their success in achieving class certification, the overall presentation of the Class's claims, the fact that they have adequate resources to litigate this matter and their professional competence and integrity. *Order on Class Certification* (ECF No. 66) pp. 16-17. In the Court's September 14, 2022 Order granting preliminary approval of the Settlement, this Court again noted that "counsel have experience litigating claims in federal court, have spent years working on this case, and have acted with professional competence and integrity."

Class Counsel respectfully submits that the fairly extensive litigation record in this case fully supports the Court's previous determination that their representation of the Class has been adequate.

**2. Risk of Non-Payment**

Class Counsel has been litigating this case on a contingent fee basis for several years. As set forth in detail in the Class Plaintiffs' *Motion for Preliminary Approval of Settlement*

(ECF No. 210) and its *Motion for Final Approval of Settlement,* this vigorously contested case has required a substantial expenditure of time and resources from Class Counsel with no guarantee of payment. Although the Class Plaintiffs were reasonably confident that they would prevail at trial, the defendants have aggressively contested nearly every aspect of Plaintiffs' claims, raising several defenses that could have ostensibly resulted in a diminished recovery, or no recovery at all for the Class Plaintiffs. To cite one such defense, it is anticipated that at trial, the Court would likely hear testimony from representatives of Atlantic Management Company ("AMC") who purport to stand by their valuation of the ESOP shares as of December 31, 2012 at $134.92 per share based on an overall value for 100% of Maine Oxy's equity at $8.8 million. If the Court were to credit this testimony, the Class Plaintiffs would be deprived of *any* recovery resulting from the defendants' underpayment for their ESOP shares.

**3. High Stakes**

As set forth in detail in the Class Plaintiffs' Motion for *Preliminary Approval of Settlement* (ECF No. 210), in the absence of an approved settlement, the proverbial post discovery floodgates will open, clearing the way for cross motions for summary judgment, a motion to decertify the class, numerous motions *in limine*, a fairly contentious bench trial and the near certainty of appellate practice regardless of which side prevails at trial. Moreover, as outlined above, if the case were tried, the Court would likely hear evidence supporting a range of possible valuations, some of which could theoretically result in a finding of no underpayment or an underpayment totaling less than the value obtained for the class members through the Settlement.

**C. A Lodestar Cross-Check Supports the Class Plaintiffs' Requested Award**

In adopting the "market mimicking" approach in *Nilsen*, this Court held that the "lodestar approach" (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage-of-funds fee, but it is not required." *Nilsen*, 400 F.Supp.2d at 272, *quoting In re Compact Disc*, 216 F.R.D. at 215-216 (D.Me. 2003).

To date, Class Counsel has litigated this matter on a contingent fee basis, and their representation agreements with the Class Representatives entitle them to a fee of up to one-third of the gross settlement amount. *Douglas Declaration* ¶ 4. As of this filing, Class Counsel estimates that their attorney fees are $343,305.00 and their case expenses total $46,049.49. *Id.* ¶¶ 5-9. Excluding case costs, the attorney fees constitute a lodestar multiplier of 3.49, which is entirely consistent with what courts have generally considered to be reasonable and much lower than the multiplier approved in other cases. *See generally Scovil v. Fedex Ground Package System*, 2014 WL 1057079 (utilizing the *Nilsen* approach, this Court approved an award of attorney fees from a common fund class action settlement where the multiplier was 4.13); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 341 (3d Cir 1998) (The Third Circuit acknowledges that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181 (approving lodestar multiplier of 8.9 in a case where plaintiffs' counsel were not primarily responsible for the litigation)*; Weiss v. Mercedes–Benz of North America, Inc.*, 66 F.3d 314 (3d

Cir.1995), *aff'g* 899 F.Supp. 1297, 1304 (D.N.J.) (awarding a fee that resulted in a multiplier of 9.3 and an average hourly rate of $2,779.63).

## II. THE REQUESTED INCENTIVE PAYMENTS ARE APPROPRIATE

The Settlement Agreement calls for incentive payments of $7500.00 for each of the four Class Representatives – Ernest Glynn, Josh Richardson, Douglas Johnson and Jeff MacDonald. These proposed incentive payments are fair and reasonable, given the assistance provided by these four gentlemen. Specifically, these named plaintiffs initiated this suit, retained Class Counsel, assisted with discovery requests and responses, sat for depositions and participated in settlement discussions, including without limitation attending a judicial settlement conference and a nine hour mediation in Boston, MA. These efforts distinguish the Class Representatives from other members of the class insofar as they took affirmative, substantive steps to advance the case. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig*., MDL 1532, 2011 WL 1398485 at *4 (D.Me. Apr. 13, 2011).

"Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit." *In re Compact Disc*., 292 F.Supp.2d at 189; *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 82 (D.Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation"); *Sheppard v. Consol. Edison Co. of New York, Inc*., 2002 WL 2003206 at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

There is no question that the $7500.00 incentive payments requested for each Class Representative are reasonable. *See In re: Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 373-374 (S.D. Ohio 1990) (citing cases in support of incentive payments

and awarding payments ranging from $35,000.00 to $50,000.00 for named plaintiffs); *Yap v. Suminoto Corp. of Am.*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to class representatives).

WHEREFORE, Class Counsel respectfully requests that this Court grant the Class Plaintiffs' Petition for Attorney Fees, Expense Reimbursement and Incentive Awards to Class Representatives.

Dated: November 23, 2022

Respectfully submitted,

/s/ Thomas L. Douglas, Esq.
Thomas L. Douglas, Esq.
DOUGLAS, MCDANIEL
& CAMPO LLC, PA
90 Bridge Street, Suite 100
Westbrook, ME 04092
(207) 591-5747
*E-mail: tdouglas@douglasmcdaniel.com*

/s/ Jeffrey P. Russell, Esq.
Jeffrey P. Russell, Esq.
Bloomer Russell & Beaupain
175 Exchange St.
Bangor, ME 04401
(207) 942-7110
*E-mail: jeff@bloomerrussell.com*

/s/ Lauren Thomas
Lauren Thomas, Esq.
Law Office of Lauren Thomas, Esq.
18 Wild Rose Ave.
South Portland, ME 04106
(207) 619-4149
*E-mail: laurenthomaslaw@gmail.com*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing all parties of record.

/s/ Thomas L. Douglas
Thomas L. Douglas
DOUGLAS MCDANIEL
& CAMPO LLC, PA
90 Bridge St., Suite 100
Westbrook, ME 04092
(207) 591-5747