# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ERNEST J. GLYNN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Docket No. 2:19-cv-00176-NT |
| ) | |
| MAINE OXY-ACETYLENE SUPPLY ) | |
| CO., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER ON PROPOSED SETTLEMENT AGREEMENT
## AND ATTORNEY FEES

Before me is the Plaintiffs' motion for final approval of a settlement agreement (the "**Settlement Agreement**") reached by the parties in July of 2022. Unopposed Mot. for Final Approval of Settlement Agreement ("**Mot. for Final Approval**") (ECF No. 216). Also before me is the Plaintiffs' motion for attorneys' fees, expense reimbursement, and incentive awards for Plaintiffs Ernest Glynn, Jeffrey MacDonald, Doug Johnson, and Joshua Richardson (the "**Class Representatives**"). Unopposed Pet. for Att'y Fees, Expense Reimbursement & Incentive Awards to Class Representatives ("**Mot. for Att'y Fees**") (ECF No. 217). For the reasons stated below, the motions are **GRANTED**.

## BACKGROUND

This case involves a dispute surrounding an employee stock ownership plan (the "**ESOP**") at Maine Oxy-Acetylene Supply Company ("**Maine Oxy**"), which supplies welding equipment and industrial and specialty gases at retail locations

throughout New England and at one location in Canada. Second Am. Class Action Compl. ("**SAC**") ¶¶ 1, 12 (ECF No. 52). The Albiston family established the ESOP in 2004 when they were Maine Oxy's sole shareholders to allow employees "to share in the growth and profits of [Maine Oxy] and to enable them to save and invest" through the ESOP. Maine Oxy ESOP Plan Doc. § 1.2 (ECF No. 46-6); SAC ¶¶ 13–16; Defs.' Answer ¶ 14 (ECF No. 58). The ESOP's profit-sharing component was intended to be an employee incentive and retirement plan. SAC ¶ 14.

By the end of 2006, Bruce Albiston had sold forty-nine percent of the shares in Maine Oxy to the ESOP, while he and his son retained the other fifty-one percent. SAC ¶¶ 14–16; Defs.' Answer ¶¶ 14–16. In 2012, the Albistons sold their remaining fifty-one percent to Defendants Daniel Guerin and Bryan Gentry for $654.62 per share. SAC ¶¶ 20–23; Defs.' Resps. & Objs. to [Pls.'] Req. for Produc. of Docs. 3 (ECF No. 38-1). Then, in 2013, the Defendants terminated the ESOP and reacquired the ESOP's forty-nine percent for $134.92 per share, giving them ownership of one hundred percent of Maine Oxy's stock. SAC ¶¶ 42–43, 53, 56; Defs.' Resps. & Objs. to [Pls.'] Req. for Produc. of Docs. 3.

The Class Representatives are four former employees of Maine Oxy who participated in the ESOP. SAC ¶¶ 2–5. They filed this class action lawsuit in April of 2019 alleging that the Defendants violated their fiduciary duties under the Employee Retirement Income Security Act ("**ERISA**"). SAC ¶¶ 1, 75–134. In particular, they contend that the Defendants misrepresented and/or artificially depressed the value of the employees' shares so that the Defendants could purchase the employee stock

2

at a "steep discount." SAC ¶ 1. The Defendants maintain that they did not breach their fiduciary duties because $134.92 per share was a fair price based upon a third-party valuation of the shares in 2012. Mot. for Prelim. Approval 1–2 (ECF No. 210); Daniel Guerin Decl. ¶ 27 (ECF No. 46-1).

The Secretary of Labor for the U.S. Department of Labor ("**DOL**"), Martin Walsh, brought a separate action in this Court on September 15, 2020, to void the buyback of the shares owned by the ESOP. *See Walsh v. Me. Oxy-Acetylene Supply Co.*, No. 2:20-cv-00326-NT, 2021 WL 2535942, at *2 (D. Me. June 21, 2021). Judge Nivison consolidated the cases for discovery and for trial. Order on Mots. to Consolidate and Scheduling Order (ECF No. 95); Order on Defs.' Mots. to Consolidate Cases (ECF No. 162).

On November 5, 2020, I certified a Rule 23(b)(3) class (the "**Class**") consisting of "[a]ll Maine Oxy employees who participated in the company ESOP and who sold their shares back to Maine Oxy after the Albistons sold their 51% interest in the company." Order on Pls.' Mot. to Certify Class 22 (ECF No. 66). The parties then engaged in a lengthy and contested discovery period. Mot. for Prelim. Approval 2; *see, e.g.*, ECF Nos. 74, 105–18, 121–22, 125–28, 131–37, 139–40, 146–57, 160–61, 163–65, 176. On July 7, 2022, however, the parties reported the matter settled. Notice of Settlement (ECF No. 205).

The parties reached this settlement after participating in a mediation with Robert Meyer. Mot. for Final Approval 6. The parties submitted the Settlement Agreement to the Court seeking preliminary approval of the Agreement and

3

authorization of their proposed notice to the Class. Class Action Settlement Agreement ("**Settlement Agreement**") (ECF 210-1). On September 14, 2022, I preliminarily approved the parties' Settlement Agreement and authorized the settlement notice to be sent to the Class. Order on Mot. for Prelim. Approval of Class Action Settlement 9 (ECF No. 211).

Under the Settlement Agreement, Maine Oxy will pay a total of $6,330,000, including attorneys' fees and costs and incentive payments to the Class Representatives, through a common fund. Settlement Agreement §§ IV.A; IV.C. The $6,330,000 figure represents the value that the Class's expert witness found the stock to be worth "in 2013 ($400 per share), multiplied by the number of ESOP shares in 2013 ($400.00 x 24,500 shares = $9,800,000), less the $3.3 million already paid by the Defendants for the ESOP stock in 2013 ($9,800,000 - $3,300.000 = $6,500,000)." Notice of Class Action Settlement ("**Notice**") 2 (ECF No. 211-1). The 6.5-million-dollar figure was then reduced by $200,000—the value of ESOP shares held by Defendants Daniel Guerin and Carl Paine. Notice 2. In addition, Class counsel seeks a total of $30,000 in incentive awards for the Class Representatives. Notice 5.

The funds will be distributed to Class members based on the number of shares allocated to them under the ESOP as of November 1, 2013, less their pro rata share of the Class Representatives' incentive award payments and attorneys' fees and costs. Settlement Agreement § IV.C.2. The Class Representatives each will receive an incentive award of $7,500, and Class counsel is asking for an award of up to $1,200,000 in attorneys' fees and costs. Settlement Agreement §§ IV.C.2; IV.F. The

4

Defendants' fiduciary liability carrier will also pay Secretary Walsh an additional $630,000 in penalties. Settlement Agreement § IV.A. In return, the Plaintiffs agree to release their claims. Settlement Agreement § IV.C.2(a).

On September 23, 2022, the Plaintiffs mailed the notice to the 156 Class members. Mot. for Final Approval of Class Action Settlement 2. The Plaintiffs were able to reach 95% of the Class before the final fairness hearing. Mot. for Final Approval of Class Action Settlement 3. I now consider whether to grant final approval to the Settlement Agreement and the attorneys' fees, costs, and incentive awards for the Class Representatives.

## DISCUSSION

I first take up the Plaintiffs' motion for final approval of the settlement and then address the Plaintiffs' motion for attorneys' fees, expenses, and incentive awards for the Class Representatives.

### I.  The Settlement is Fair Reasonable and Adequate

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). I may approve a class settlement proposal "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, I consider whether:

>  (A) the class representatives and class counsel have adequately represented the class;
>  (B) the proposal was negotiated at arm's length;
>  (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> 
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Court approval is necessary to 'protect unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.'" *Glynn v. Me. Oxy-Acetylene Supply Co.*, No. 2:19-cv-00176-NT, 2020 WL 6528072, at *10 (D. Me. Nov. 5, 2020) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

I held a final fairness hearing on November 30, 2022 (ECF No. 218). No Class member appeared to object,[1] and no written objections have been filed. The only Class members that opted out are the Defendants. At the hearing, I questioned counsel for both sides so that I could determine whether the proposed settlement is in fact fair, reasonable, and adequate. Based on the hearing and the parties' submissions, I make the following findings and conclusions.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class

The Class Representatives have adequately represented the Class. They researched and initiated the lawsuit, retained counsel, assisted with discovery

---

[1] One former employee attended the hearing to voice his concerns. Although the employee was a participant in the Employee Stock Option Plan (the "**ESOP**"), he sold his shares before the Albistons sold their 51% of the company to the Defendants in 2012. Consequently, this employee was not a member of the Class and lacks standing to object to the Settlement Agreement. Non-Class members, such as the objecting employee, retain any claims they might have against the Defendants, and their interests are not affected by the Settlement Agreement. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 154 (E.D. La. 2013).

requests and responses, sat for depositions, and participated in settlement discussions. The Class Representatives displayed a keen interest in the case at every stage and helped to point out facts and potential witnesses. Throughout the process, they insisted on obtaining the best recovery possible for the Class. Mot. for Final Approval 5.

The Class counsel has also adequately represented the Class. They managed this case for three years, engaged in hotly contested motions practice, and had a lengthy and difficult discovery period. In addition, they thoroughly investigated the Class's ERISA claims, are experienced in litigating claims in federal court, had adequate resources to litigate the case, and demonstrated professional competence and integrity at each stage. Mot. for Final Approval 4–5.

### B.  The Proposal Was Negotiated at Arm's Length

The parties' settlement was achieved only after multiple days of mediation with Robert Meyer, a well-respected and experienced mediator. In advance of the mediation, the parties submitted comprehensive mediation statements to Mr. Meyer. Moreover, the settlement was the product of the mediator's proposal, which was circulated after it became clear the parties would not achieve a settlement on their own. Mot. for Final Approval 6. Accordingly, I find that the settlement is the product of fair, arm's-length negotiations, which entitles the parties to a presumption that the settlement is reasonable. *See, e.g.*, *Noll v. Flower Foods Inc.*, Nos. 1:15-cv-00493-LEW, 1:20-cv-00410-LEW, 1:20-cv-00411-LEW, 2022 WL 1438606, at *5 (D. Me. May 3, 2022).

### C.      The Relief Provided for the Class is Adequate

#### 1.      The costs, risks, and delay of trial and appeal

I also examined the strengths and weaknesses of the case, including the Class members' claims and the defenses available to the Defendants, and I find the relief the settlement affords the Class members is adequate. The settlement achieves a significant benefit for the Class members in the face of substantial litigation obstacles. The settlement amounts to $6.3 million. The varying valuations of the ESOP shares that would likely have been presented at trial ranged from $134.92 to $467.57. The settlement uses the Plaintiffs' experts' valuation of the stock. Mot. for Final Approval 7. The parties agree that there was no possibility that the Plaintiffs could have recovered punitive damages. Pls.' Resp. to Defs.' Mot. to Strike Jury Trial Demand & Mot. for Partial J. on the Pleadings Regarding Pls.' Demand for Punitive Damages (ECF No. 25); *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–48 (1985) (holding that ERISA does not authorize punitive damages). It is difficult to see how the Plaintiffs could have recovered more money after trial and appeal, although interest would potentially have been in play. And it is possible that the Plaintiffs could have recovered nothing at all. With the number of claims and complex expert testimony required, the parties anticipate that a trial would be expensive and prolonged, possibly taking up to two weeks. Mot. for Final Approval 8. The Settlement Agreement provides the benefit of a guaranteed and considerable payment to Class members, rather than a speculative payment of a hypothetically larger amount years down the road.

### 2. The effectiveness of the proposed method of distributing relief to the class

The proposed method of distributing the award to the Class is also effective. The common settlement fund will be distributed in two installments. The first installment of $2,370,000.00 is due five days after the Settlement Agreement is finally approved and will be distributed by the settlement administrator. Mot. for Final Approval 8–9. The settlement administrator will distribute the remaining money on the later of August 15, 2023, or thirty days after the settlement is finally approved. Mot. for Final Approval 9. Settlement checks will be negotiable for 125 days, and if they need to be reissued, they will be negotiable for the remainder of the initial 125-day period or 45 days from the remailing date, whichever is later. Settlement Agreement § VIII(B). If any checks are not cashed during the initial period, the settlement administrator will use additional means, such as skip tracing, for a second round of mailing. Settlement Agreement § VIII(B). If that does not work, the settlement administrator will contact the Employee Benefits Security Administration and the DOL and take steps consistent with their field bulletin on missing Class members. Settlement Agreement VIII(C).

Although Class counsel was able to locate 95% of the Class, I noted at the final fairness hearing that I had some concerns about seven potential Class members who had not received notice. Before the hearing, Class counsel tried to locate the missing members by performing a search following the guidelines in the DOL's Field Assistance Bulletin No. 2014-01 and hiring an outside vendor to track them down. Mot. for Final Approval 2. At the hearing, counsel clarified that four of the seven

missing Class members were deceased, although they were able to identify the estate of one of the deceased members. Given that the average recovery was significant, I asked counsel to take additional efforts to locate the missing members.

On December 6, 2022, Class counsel filed a supplemental declaration explaining that all missing Class members or their heirs had been located.[2] Suppl. Decl. of Thomas L. Douglas, Esq. ("**Suppl. Decl.**") ¶ 2 (ECF No. 220). Out of the four deceased persons, one was determined not to be a member of the Class. The other three's heirs were identified using information from the Defendants, online obituaries, information in registries of deeds, and other online search tools. Suppl. Decl. ¶ 4. The three living Class members were also located. Suppl. Decl. ¶¶ 5–6. To ensure that these recently located Class members receive their part of the settlement, Class counsel is directed to continue efforts to contact them to inform them of the settlement and submit a status report to the court describing their efforts. With all Class members now identified, the proposed method of award distribution should be effective.

### 3. Attorneys' Fees

The proposed award of attorneys' fees is also reasonable. Class counsel is seeking an award of $1.2 million for attorneys' fees and costs, 19% of the total settlement. Mot. for Final Approval 9. The contingency fee agreements originally signed by the Class Representatives allowed an award of up to one-third of the total

---

[2] As requested, the Supplemental Declaration also identified the value of the shares held by the previously missing Class members and how much they stand to receive from the Settlement Agreement. These numbers range from $2,302.59 to $68,433.52. Suppl. Decl. of Thomas L. Douglas, Esq. ¶ 7 (ECF No. 220).

recovery, but counsel opted for a lower amount. Mot. for Final Approval 9. This is a below-average recovery for counsel in class actions, as contingent fee awards usually are within the range of twenty to thirty percent. *See In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Pracs. Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *8–9 (D. Me. Feb. 10, 2016).[3]

Other factors demonstrate the fairness and reasonableness of the attorneys' fees as well. This was a hard-fought class action that has lasted three years, during which time counsel has handled numerous motions, conducted lengthy discovery

---

[3] There are two methods in the First Circuit for awarding fees in class actions. *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 270 (D. Me. 2005). The first is the "percentage-of-funds" method, under which the plaintiffs' counsel is awarded a fee equal to a "reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). The other is the "lodestar" method, under which the fee is calculated based on the amount that the attorneys could have billed the class for their time, subject to a multiplier or discount for special circumstances, plus reasonable disbursements. *Nilsen*, 400 F. Supp. 2d at 271. Here, the parties used the percentage-of-funds method, "the prevailing approach used in common fund cases" like this one. *O'Connor v. Oakhurst Dairy*, No. 2:14-cv-00192-NT, 2018 WL 3041388, at *4 (D. Me. June 19, 2018) (citing *In re Thirteen Appeals*, 56 F.3d at 307).

Using the percentage-of-funds method, the question is whether the total fee is reasonable when examined as a percentage of recovery, considering the market rate for legal services. *Nilsen*, 400 F. Supp. at 271, 278. Fees in class actions generally range from twenty to thirty percent of the total recovery, so the low percentage here—19% of the total settlement amount—indicates that the attorneys' fees are reasonable. *See id.* at 281 ("Median attorney fee awards in other class actions generally . . . range within a few percentage points on either side of 30%."); *O'Connor*, 2018 WL 3041388, at *4 (approving fees and costs of one-third the settlement amount); *In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., Fair Debt Collection Pracs. Act (FDCPA) Litig.*, No. 2:13-MD-2426-DBH, 2016 WL 543137, at *9 (D. Me. Feb. 10, 2016) ("In the First Circuit, courts typically award attorney fees 'in the range of 20–30% with 25% as "the benchmark." ' " (quoting *Latorraca v. Centennial Techs. Inc.*, 834 F. Supp. 2d 25, 27–28 (D. Mass. 2011))). Moreover, Class counsel settled for substantially less money than the one-third of the settlement fund authorized in their contingent fee agreements with the Class Representatives.

I note that the motion for attorneys' fees also indicates that Class counsel calculated their lodestar to be about $1.3 million. *See* Unopposed Pet. for Att'y Fees, Expense Reimbursement & Incentive Awards to Class Representatives 7 (ECF No. 217). The Settlement Agreement provides for attorneys' fees and costs less than this amount.

involving many disputes, and attended a days-long mediation. Mot. for Final Approval 4–5. Further, Class counsel performed this work on a contingent fee basis, so they had no guarantee of payment.

### 4. Agreements Required to Be Identified under Rule 23(e)(3)

Finally, there is a separate settlement agreement between the DOL and the Defendants. This agreement imposes fines on the Defendants and establishes a fiduciary bar against the Defendants from administering ERISA-covered employee benefit plans. The Secretary of Labor finds the Settlement Agreement in this case to be fair and reasonable and has no objections. Considering that the DOL settlement does not reduce the Plaintiffs' recovery, this factor favors finding the Settlement Agreement to be fair and reasonable.

### D. The Proposed Settlement Treats Class Members Equitably Relative to One Another

The proposed Settlement Agreement also treats the Class members equitably relative to each other. Each individual's recovery is based on the number of shares they returned to Maine Oxy in 2013 multiplied by the adjusted share price, less the individual's pro rata share of the attorneys' fees, costs, and Class Representative incentives. This provides an easy-to-understand and equitable way to divide the funds.

The fact that no Class members filed written objections to the settlement nor requested exclusion after receiving notice suggests that the settlement has been well-received. Counsel noted that at least 39 members of the Class have contacted them, Suppl. Decl. ¶ 12, and "the response to the settlement has generally been positive,"

12

Mot. for Final Approval 11. At the hearing, Class counsel admitted that they heard some limited negative feedback since the Settlement Agreement was signed, but the negative feedback was based on misinformation.[4] The generally positive response and the fact that the two dissenters did not take further action after learning more about the settlement provide further evidence that the Settlement Agreement is fair, adequate, and reasonable.

## II. The Attorneys' Fees, Case Expenses, and Incentive Payments Are Fair and Reasonable

I next consider the Plaintiffs' motion for awards of attorneys' fees, expenses, and the Class Representatives' incentive payments.

### A. Attorneys' Fees and Costs

Under Rule 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" when approving a class action settlement agreement. Fed. R. Civ. P. 23(h). "It falls to the court to ensure that any award of attorney's fee[s] is fair." *Noll*, 2022 WL 1438606, at *8. As discussed, above, I find the attorneys' fees are fair and reasonable.

---

[4] First, on August 5, 2022, Class counsel received an email from someone who chose to remain anonymous expressing concerns about the settlement. The person had heard that the original suit started at $45 million but the final amount was $4 million. Suppl. Decl. ¶ 13. Counsel explained that these concerns were based on misinformation, and the person did not respond with any further complaints. Second, Jeffrey Smith emailed Class counsel on November 23, 2022, to voice concerns after hearing that the case was only settled after the Defendants issued an ultimatum ("take the proffered deal or the defendants would file for bankruptcy") and that the DOL valued the ESOP at $17 million. Suppl. Decl. ¶ 14. Class counsel responded by explaining that his concerns were based on misinformation, and he provided Mr. Smith with the correct information. Suppl. Decl. ¶ 15. Class counsel invited Mr. Smith to discuss the matter further if he was still unsatisfied, but Mr. Smith did not respond.

### B.     Incentive Awards

The Settlement Agreement also provides for an incentive award for each of the Class Representatives of $7,500, for a total of $30,000, in addition to recovering their pro rata share of the settlement fund based on the number of shares they owned. "Incentive Awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Id.* at *9 (quoting *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-CV-10219-JGD, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017)). In reviewing an incentive payment, "courts consider the actions the named plaintiffs have taken to protect the interests of the class, the amount of time and effort they have expended in pursing the litigation, the degree to which the class has benefited from the named plaintiffs' efforts, and any negative effects they have risked." *In re TRS Recovery Servs.,* 2016 WL 543137, at *9 (internal citation omitted).

As discussed above, the Class Representatives have spent considerable time and effort in diligently representing the Class, such as by sitting for depositions and participating in settlement discussions. Additionally, 95% of the Class members were notified of the Settlement Agreement prior to the hearing, and none objected to it. This suggests that the payments are fair and reasonable.

### CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for final approval of the Settlement Agreement (ECF No. 216) and the motion for attorneys' fees,

expense reimbursement, and incentive awards for the Class Representatives (ECF No. 217). Class counsel is ordered to submit a status report within 30 days detailing their efforts to contact the six recently located Class members or their estates to inform them of the settlement.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 13th day of December, 2022.